CHARLES E. ADAMSON *vs.* EVA S. WIGGINS.

February 27, 1891.

**Replevin by Chattel Mortgagee—General Averment of Title—Proof of Usury under General Denial.**—Where a mortgagee of chattels brings an action to recover the possession thereof, alleging title and ownership generally, and upon the trial relies upon the mortgage to establish his title, the defendant may, under a general denial of plaintiff's title in his answer, show that the mortgage is void for usury.

**Usury—Receipt of Excessive Rates or Bonuses by Agent.**—Where a non-resident principal is engaged in the regular business of loaning money upon chattels or other security, through a resident agent, to whose discretion he intrusts the entire management of the business of loaning, collecting, and reloaning money, under a general authority for such purpose, upon such security and terms as the agent may deem proper, the acts of his agent in conducting such business, and in exacting and including in contracts unlawful and excessive rates of interest or bonuses, will bind his principal, and be held usurious; and so, also, the securities will be void, if he suffers his name to be used as a mere cover for usury.

Appeal by plaintiff from an order of the municipal court of Minneapolis, refusing a new trial after verdict for defendant in an action of replevin for household goods of the value of $300.

*Merrick & Merrick,* for appellant.

*Thomas Canty,* for respondent.

VANDERBURGH, J. The plaintiff brings this action to recover the possession of certain personal property described in the complaint, the plaintiff alleging that he is the owner and entitled to the possession thereof. The defendant interposed an answer denying generally the plaintiff's allegation of ownership. To establish his right to recover the possession of the property, plaintiff introduced in evidence a chattel mortgage thereof executed to him by the defendant, to secure her note of the same date for the sum of $210, with interest at 10 per cent. per annum, and payable in 30 days after date. Defendant admitted the execution of these instruments, but offered and was permitted to introduce evidence tending to prove that they were

usurious and void. The evidence was received under the objection and exception of the plaintiff that it was irrelevant and inadmissible because the defence of usury was not specifically pleaded. Where the action is brought to set aside an instrument as usurious, of course the facts must be specifically alleged; and so, in an action brought to recover upon or to enforce a contract claimed by defendant to be void for usury, such affirmative defence is new matter in confession and avoidance, which must be affirmatively alleged in the answer. But, where, as in this case, the plaintiff alleges title generally to the property in question, the defendant may deny generally the allegations of title and ownership, and, under such denial, he may attack the contract or instrument upon which plaintiff relies to prove his title, and show that it is void for usury, as well as for fraud. And there is no distinction in such cases between the defence of usury and other defences which tend to disprove the plaintiff's case, and show that he had no title. *Fulton Bank* v. *Stafford,* 2 Wend. 483; *Wakefield* v. *Day,* 41 Minn. 344, (43 N. W. Rep. 71;) *Johnson* v. *Oswald,* 38 Minn. 550, (38 N. W. Rep. 630.) This disposes of defendant's objection to evidence, on the ground stated, and to his exception to the modification of his first request to charge the jury.

2. It appears from the evidence that the plaintiff is a non-resident, and that one William H. Adamson, who was extensively engaged in loaning money upon chattel mortgages in Minneapolis, was the person who negotiated the loan to defendant upon the mortgage under which plaintiff claims title to the chattels in controversy here. It was entirely proper to show the relations between these parties, and that William H. Adamson was the general agent of plaintiff in the business of making loans, and also the manner in which the plaintiff's business was conducted by the agent under his general authority to invest and reinvest plaintiff's money, and the circumstances under which the loan in question was made. The evidence tended to show that the agent was left to conduct the business according to his own judgment and discretion; that he had, when this loan was made, taken a large number of mortgages in the name of the plaintiff, amounting, in the aggregate, to a great many thousand dollars; and that he loaned, collected, and reloaned the

money and conducted the business precisely as if it was all his own. The evidence on this subject is undisputed.

In this instance, defendant applied to William H. Adamson for a loan. He referred her to a clerk, who was regularly employed by him to attend to the business, and with whom the negotiations were made. The evidence of the parties does not entirely agree as to the nature of the transactions which followed, so that the questions of difference between them in reference to the contract and the interest exacted were for the jury. A loan out of which she secured $200 only was in fact negotiated, for which she gave her note and mortgage for $210, payable in 30 days, with interest at 10 per cent. upon the last-named sum before and after maturity. Her testimony is to the effect that, when she applied for the loan, he told her the interest would be $10 per month, and every time she renewed the note the same charge would be made, and, in pursuance of that understanding, she paid $10 per month for several months to obtain extensions. The evidence on the plaintiff's behalf tended to show that the sum of $10 charged and deducted for the first month was to cover the expense of examining the goods mortgaged; but the subsequent monthly payments of $10 each are admitted to have been charged for extensions. The jury might find from the evidence that the $10 deducted was a bonus and extra charge for the loan, exacted by William H. Adamson, and not merely for expenses, and that it was a part of the regular business of himself and servants to watch the security, and attend to the extensions, his business being very large and systematically conducted. We think the evidence warrants the conclusion also that it was a part of the original understanding in this case that the loan was to be for one month, with privilege of monthly extensions at the rate of $10 per month; and the defendant accordingly, for several months, paid such monthly instalments to procure such extensions, which were granted on that condition. We have no doubt that the evidence was sufficient to justify the jury in finding the transaction usurious in its inception, and the note and mortgage void. According to the testimony of the defendant, the bonus of $10 was the inducement and consideration for the 10 per cent. loan. It was included in the note, and presumptively

the agent was authorized by plaintiff to so include it. This must be inferred from the relations between them, and the manner in which the business was conducted, from which it is evident that William H. Adamson had unlimited discretion and authority in the conduct of the business. If the plaintiff is the *bona fide* principal, then the case falls within the rule laid down in *Lewis* v. *Willoughby*, 43 Minn. 307, (45 N. W. Rep. 439;) and, if not, and his name is used as a cover by William H. Adamson, this case is still stronger for the defendant.

We find it immaterial to consider in detail the assignments of error based on the charge, as the decision of the case must have necessarily turned on the questions of fact we have referred to.

Order affirmed.