HARRY HANSON v. DIAMOND IRON MINING COMPANY and Others.
SAME v. FREDERICK E. FOSTER and Another.[1]

November 28, 1902.

Nos. 13,286, 13,287—(87, 88).

### Pleading—General Denial.

Any evidence which tends directly to contradict the allegations of a pleading to which it is interposed is admissible under a general denial. Matters in confession and avoidance must be specially pleaded, but it is unnecessary to so plead facts which directly contradict the allegations and proofs of the opposite party.

### Evidence—Findings.

Evidence examined, and *held* to sustain the findings of the trial court.

Separate actions in the district court for Ramsey county, the first against defendants, Diamond Iron Mining Company, Frederick E. Foster and William J. Tully, to recover $1,250, the balance of a commission earned by plaintiff on the sale of real estate; the second to recover from defendants, Frederick E. Foster and William J. Tully $1,875 had and received by them to the use of plaintiff. Defendant mining company disclaimed all interest in the sum sought to be recovered from it and brought the same into court to await the determination of the action. The two cases were tried together before O. B. Lewis, J., who made separate findings of fact and as conclusions of law found, in the first case, that plaintiff was entitled to the $1,250 paid into court by defendant mining company, and to recover interest thereon and costs from defendants Foster and Tully; and in the second case, that plaintiff was entitled to recover from defendants Foster and Tully the sum demanded. From orders denying a motion in each case for a new trial, defendants Foster and Tully appealed. Affirmed.

*C. E. Hamilton* and *J. T. Avery*, for appellants.
*Uri L. Lamprey*, for respondent.

[1] Reported in 92 N. W. 447.

BROWN, J.

The Diamond Iron Mining Company, a corporation, owned a large tract of mining property, which defendants Foster and Tully, with one Whitney and one Griffin, were authorized to sell for the sum of $100,000, they to receive for their services all they could obtain over and above that amount. Those parties entered into an agreement by which they agreed to unite their efforts towards making a sale, and to divide equally between them any commission they might receive over and above the sum of $100,000 to be paid the company. They subsequently made a sale of the property to one Hyman for the sum of $130,000. The purchase price therefor was paid to the company, and the company, in turn, paid over to Foster, Tully, Whitney, and Griffin, in separate instalments, the commissions due them; and each received his proper share, except that Foster and Tully, who received the money, refused to pay to Griffin the sum of $1,875, his share of the last instalment. It seems that the company had paid the entire commission to Foster and Tully, and on the theory that Griffin was not entitled to this amount, because of facts to be stated presently, they declined to pay it to him. Griffin assigned his interest in the claim to Lamprey, who, in turn, assigned it to plaintiff, and plaintiff brought these actions, one against Foster and Tully as copartners, and one against the mining company joined with Foster and Tully, to recover the amount.

The principal defense interposed appears to be a claim that Griffin received from the mining company a commission of $5,000 for services in effecting a sale of the property, in addition to the $30,000 received by the four parties jointly; and it was insisted on the trial that under the contract between those parties Griffin was legally bound to divide the same equally with his associates, an accounting was demanded, and an adjustment accordingly sought from the court. There is no question but that Griffin received $5,000 from the mining company, either as a commission for services in effecting the sale, or in liquidation of some interest he had in the property. The trial court found that the $5,000 was not received as a commission, but in payment of his interest in the property, and judgment was ordered for the plaintiff as prayed.

for in the complaint. From an order denying a new trial, defendants appealed.

Only two questions are presented in this court: (1) Whether the court erred in receiving evidence offered by plaintiff in rebuttal tending to show that the $5,000 was paid to Griffin in liquidation of his interest in the property, and not as a commission for services rendered by him; and (2) whether the evidence reasonably tends to support the findings of the trial court in that respect.

1. The answer of defendant sets out fully the relationship between Foster, Tully, Whitney, and Griffin; the agreement entered into by them to divide equally all commissions received on the sale of the property; and it is alleged therein that the $5,000 received by Griffin was so received by him as a commission for services rendered in the matter of selling the property. The reply was a general denial. On the trial plaintiff offered, in rebuttal, evidence tending to prove that the money was not received by Griffin as a commission, but that it was received by him for his interest in the property. It is urged in this court that this evidence, which was properly objected to in the court below, was incompetent under the pleadings, it being insisted that plaintiff's claim in this respect, namely, that the $5,000 was received in payment of Griffin's interest in the property, should have been pleaded in the reply. Appellants are in error. The rule is very thoroughly settled that any evidence which tends directly to contradict allegations of a pleading to which it is interposed is admissible under a general denial. Matters in confession and avoidance must, of course, always be affirmatively pleaded; but facts which tend to directly contradict and dispute allegations and proofs of the opposite party may be proved under a general denial, and need not be specially pleaded. Johnson v. Oswald, 38 Minn. 550, 38 N. W. 630; Adamson v. Wiggins, 45 Minn. 448, 48 N. W. 185; Johnson v. Morstad, 63 Minn. 397, 65 N. W. 727; Nichols & Shepard Co. v. Minnesota Thresher Mnfg. Co., 70 Minn. 528, 73 N. W. 415. So there was no error in the admission of this evidence.

2. It is claimed that the evidence is clearly and palpably against the findings of the trial court, and that there should be a new trial. The question to be considered in this connection is simply whether

the $5,000 paid by the mining company to Griffin was so paid to him as a commission, or for his interest in the property. If paid as a commission, probably the contract between Foster, Tully, Whitney, and Griffin would require that it be paid into that copartnership and distributed equally between the members. But the trial court found that the money was paid to discharge Griffin's interest, and we have only to inquire whether the evidence fairly and reasonably tends to support that finding.

It appears from the record that Griffin discovered the fact that there were iron deposits upon this particular property. He communicated the fact to one Warner, his father-in-law, who purchased a large interest in it, with the understanding, as Griffin claims, that he (Griffin) should have an interest therein. Griffin distinctly testified on the trial that he had such interest at the time the land was listed with the copartnership for sale, and that he communicated the fact to Foster and Whitney, his associates, and also to Smith, the secretary of the mining company. It appears that the mining property, consisting of a great many acres of land, was formerly owned by individuals, but prior to any of the negotiations involved in this case was transferred to the corporation.

Before entering into the contract with Foster, Tully, and others, for the sale of the land, the corporation made a contract with one Cook by which the company agreed to pay to Cook, if he should procure a purchaser for the land, the sum of $5,000. This contract, though made in the name of Cook, was in fact made with Griffin, he being the real party in interest, and the amount to be paid thereunder was to be paid to him; but the writing states that it was to be paid to Cook, and for his services in procuring a purchaser for the land. The reason why the contract was made in Cook's name, as disclosed by the evidence, was to deceive Warner, who was president of the mining company and Griffin's father-in-law, and to lead him to suppose that the contract was just what it purported to be upon its face, and not a cover to secure the payment to Griffin of his asserted interest in the property. It seems that Warner and Griffin had had some difficulty about the property. Warner repudiated the claim of Griffin to any interest therein, and refused to allow him anything in that direction; but the

secretary of the corporation adjusted Griffin's claim at $5,000, and to secure it, executed, on the part of the corporation, this contract in the name of Cook. Griffin testified—and there is nothing to contradict him—that the purpose of this was to secure the payment of his interest in the property, and that it was made in Cook's name to deceive his father-in-law.

Warner is not a party to the action, nor is he in any way concerned or interested in the result. Whether he was in fact deceived by the arrangement between the secretary and Griffin is not of importance in the case. Perhaps the evidence tending to show that the $5,000 was paid to Griffin under the Cook contract as and for his interest in the property would not authorize a court of equity to enforce it,—though we do not hold that it is not,—but it is sufficient, beyond any question, to justify the finding that it was not paid as a commission for services rendered by Griffin in selling the property, and unless it was so paid defendants have no just claim to any portion of it. The evidence was all before the trial judge. He had the witnesses before him, and was better qualified than this court to determine their truthfulness and the weight and effect to be given their testimony, and, within the oft repeated rule, we are not prepared to say that the evidence is so clearly and palpably against his findings on this subject as to warrant a reversal of the case. The Cook contract was not conclusive. The reason why it was put in this particular form, and in the name of Cook, was sufficiently explained.

The evidence fairly and reasonably tends to support the conclusions of the trial court, and the order appealed from is affirmed