ASA LOW *v.* ESTATE OF B. B. MUSSEY,—GEORGE PRICHARD, *Administrator.*

### Contract. Usury. Assignments.

Where a party agreed to raise for the plaintiff twenty thousand dollars for two years, on conditions that the plaintiff would purchase of him a factory for twenty-five hundred dollars, and would give him a note for twenty-five thousand dollars, which was to stand as an indemnity note, secured by a mortgage of the plaintiff's real estate, it was *held,* that this was an agreement to loan twenty thousand dollars, and not merely to guarantee the plaintiff's notes and drafts to that amount.

And if the factory was worth but one thousand dollars, and this was so understood by both parties at the time of the purchase, but nothing was said as to its value, it was *held*, that this purchase was a mere cover for usury.

And when, in consequence of this agreement, the said party was obliged to pay seventeen hundred and twenty dollars to raise money to carry on his own business, but charged it to the plaintiff, under the pretense that he had to pay it to raise the money for the plaintiff, and the same was paid by the assignees of the plaintiff, and by his direction, (he having failed, and made an assignment of his property for the benefit of certain creditors), it was *held*, that this sum was obtained by fraud and could be recovered back.

*Held* also, that the assignees having failed to claim a restitution of this sum until their right to claim it is barred, the *plaintiff* may recover it back.

Where a debtor mortgages his real estate, and afterwards makes an assignment of a portion of his property, including that mortgaged, to certain creditors to pay certain debts, and the assignees pay the mortgage debt, a part of which was usury, by the special request and direction of the debtor, it is *held*, that the right to recover back the usury is personal to the debtor as the party who furnished the funds, and appropriated them to this particular use.

Where a debtor makes an assignment of a part of his property to certain creditors to pay the debts he owed them, and also puts into their hands a fund to be applied on his debts, but not subject to or included in the assignment; and the assignees object to paying a certain claim, believing it to be usurious, but do pay it pursuant to the directions of the debtor, the law will presume, from the conduct of the parties and in the absence of all proof to show any different application of this fund, that the claim was paid out of this fund, and the *debtor* may recover it back.

ASSUMPSIT. The case was referred, and the referees, besides stating the facts found by them upon several claims in reference to which no question was subsequently made, reported in substance as follows:

In 1849, Asa Low, the plaintiff, of Bradford, Vt., solicited a loan of $20,000 of B. B. Mussey, of Boston, Mass. Mussey proposed that if he would purchase of him a factory in Haverhill, N. H., for $2,500, and give his note therefor, payable in two years, with interest after six months, and would give him a note of $25,000, which was to stand as an indemnity note to secure the payments of loans made to him (Low), and secure this last note by a mortgage of his real estate in Bradford, which was

worth much more than $25,000, then he would raise for Mr. Low the sum of $20,000, or an average of $20,000,—Mr. Low to pay the going rate of interest in market. The time of this accommodation of $20,000 was to extend two years. This proposition Mr. Low accepted. The mortgage and notes were executed and delivered by Low, and a deed of the factory by Mussey.

At the time of the purchase of the factory it was worth much less than $2,500, and was so understood by both Low and Mussey, but nothing was said about the value of it, and Low purchased it at an advanced price beyond its real value to induce Mussey to assist him as above stated, and for no other reason. The referees found that the factory was not worth over $1,000, and was ultimately sold for $610. by Low's assignees. The twenty-five hundred dollar note given for the factory was considered an advancement made by Mussey, and secured by the mortgage. It was understood and expected by Low, when the arrangement between them was agreed upon, that Mussey was to furnish the $20,000, in money, but Mussey did not loan Low any money, but raised money for him by indorsing his notes and accepting his drafts, and selling them to brokers, and transmitting to Low the net proceeds, which notes and acceptances when matured were paid by Mussey. This Mussey continued to do until September, 1851, when the whole amount he had paid for Low was over $30,-000, including the twenty-five hundred dollar note given for the factory. At this time, September, 1851, Low failed, and made an assignment of a part of his property to certain creditors to pay the debts he owed them, and to apply the balance of the proceeds of the property as he should direct, and at the same time, directed such balance to be paid to certain creditors then specified. The twenty-five hundred dollar note was paid by the assignees with the interest, without objection on the part of Low. Mussey was one of the assignees, and was paid the full amount of his claim for principal and interest on the notes and acceptances, and for money by him paid out to raise the money on Low's notes.

13

It appeared that Mussey died in 1856, and that Low never made any claim upon any one for anything growing out of this twenty-five hundred dollar note item until he made it in this suit.

It further appeared that Mussey, being one of the assignees, was one of the first-class to be paid under the assignment. Among his claims presented to the assignees was one for $1,720, which he claimed was for money that he had to pay a broker by the name of De Grand, in Boston, as a bonus, which De Grand charged for furnishing him with funds with which to redeem Low's notes and drafts when matured. The assignees doubted the propriety of allowing this item, and Low objected to it, on the ground that it was an usurious claim; but Low was at length induced, by promises of assistance from Mussey, to withdraw his objection, and this item was then allowed and paid by the assignees. But the referees found that this $1,720. was not for cash which Mussey in fact paid out to raise money for Low on his notes and drafts; but that, in consequence of the arrangement he made with Low by which he undertook to raise funds for him to the amount of $20,-000, it became necessary for Mussey to raise money to carry on his own business, and that this $1,720. was in fact money paid by him to raise funds for this purpose. The referees also reported that Low wrote a letter to Mussey in 1847, in which he advised Mussey to sell the Haverhill factory for $3,000. if he could not get any more for it. But it appeared that the factory was then in running condition, and was in operation, and the machinery was in it, and included in this estimate. When the factory was deeded to Low, the machinery had been taken out. The ownership of the machinery was never in Low. It further appeared that Low estimated the factory to be worth $1,500, in his assignment. It further appeared that the property assigned by Mr. Low proved insufficient to pay the debts secured by said assignment, after including about $2,800. belonging to Mr. Low, which was not included in the assignment, but which he put into the assignees' hands, and it was applied to-

wards paying the debts.   There was no testimony to show that
the two funds were kept separate—or out of which funds the
$1,720 was paid.

At the January Term, 1862—PECK, J., presiding—the Court,
upon the report of the referees, allowed the two items of the
plaintiff's account, to wit: $1,500. paid by Low in excess of
value on the Haverhill factory, and interest from January 1st,
1860 ; and $1,720, and interest from February 1st, 1853, that
being the time from which Mussey charged interest on that
item.

Other items were disallowed, and both parties excepted, but
all questions appear to have been settled, except as to the two
items above referred to.

*Washburn & Marsh*, for the defendant, cited *Kimball* v. *Es-
tate of Baxter*, 27 Vt. 628 ; *Tudor* v. *Taylor*, 26 Vt. 450 ; Burrill
on Assignments 325.

*R. McK. Ormsbee*, for the plaintiff.

The Haverhill factory trade was usurious.   It comes within
the case of *Austin* v. *Harrington*, 28 Vt. 130.   The payment to
Mussey of $1,720 in 1853 by the assignees, was usury.   No
matter what the guise or pretense ; if the payment was really for
use of money, it is usury.   The factory item was paid by Low
himself.   He secured that item by mortgage, and then assigned
the mortgaged premises for payment thereof.   *Nelson* v. *Cooley*,
20 Vt. 201.   Claim for usury is " a personal right"—a tort—
passes not to assignees in bankruptcy, and is not subject to
trustee process.   *Nichols et al.* v. *Bellows*, 22 Vt. 581; and *Barker*
*Esty*, 19 Vt. 131.

ALDIS, J.   I.   As to the $1500.00, claimed to have been paid as
usury in the purchase of the Haverhill factory.   The report of the
referees shows that the purchase of the factory was a part of the
transaction by which Mussey agreed to raise for Low the sum
of $20,000.00.   The memorandum signed by Mussey, dated

November 12th, 1849, as well as the whole tenor of the report, settles this point clearly.

We next inquire was that transaction a loan of money by Mussey to Low, or merely an agreement to guarantee Low's notes and drafts to that amount? This was a fact for the referees to find, and we think that the report, and the facts stated in the report, both show that it was in substance a loan.

The nature of the transaction and the necessities of Low tend to show that Mussey was not merely to guarantee Low's drafts and notes, but was relied upon to furnish money to the amount of $20,000. for two years to pay them. The mode of doing the business shows this—Mussey paying Low's notes and drafts to that amount without looking to Low for funds,—acting throughout upon the basis that he had $20.000 of Low's money in his hands for Low to draw upon. In this matter it is not the form of doing the business, but the substance that we are to regard. The memorandum made by Mussey, Nov. 12, indicates a loan; it is " $20,000 for two years." The report finds that " Low understood, when the arrangement was agreed upon, that Mussey was to furnish the $20,000 in money." When the report states, that Mussey did not loan him any money, but raised money for him by endorsing his notes and accepting his drafts, and selling them to the brokers, and transmitting the proceeds to Low, and paying the notes and drafts when they matured,—it must be fairly understood as showing only the manner in which the business was done. That mode was more consistent with the idea of a loan, than of a mere guaranty. The language of the mortgage has been relied upon in argument to show that it was merely an agreement to guarantee Low's notes and drafts. It does unquestionably show that when the mortgage was made it was expected that Low should draw upon Mussey from time to time as he needed money, and that Mussey should accept and pay such drafts, or should endorse his notes for the same object. But, though it thus shows the form in which the parties expected the business would be done, it is entirely consistent with the understanding that the advancement

of the money was to be a loan, which Low should not be called on to repay for two years.

The purchase of the factory—was it merely a cover for usury? The report says that the price of the factory was $2500 ; that it was worth in fact much less than $2500, *and was so understood by both Low and Mussey*, and Low bought it at an advance beyond its real value to induce Mussey to assist him as already stated. It does not appear that Low and Mussey spoke of any other price than $2500, or at what sum they then estimated its true value. They would not be likely to say much on that point. The referees find its true value at that time to have been not over $1,000. The circumstances relied on to show that the parties considered it worth more—the letter of Low, his advice to sell it with the machinery at $3,000,—his estimate of it in the assignment at $1,500, &c., are all too indefinite and insignificant to raise a reasonable doubt but that both fully understood that the purchase was a mere cover for usury. We are obliged to so regard it.

The payment of this $2500, therefore, included at least $1500, paid as usury. The case comes within the principle of *Austin* v. *Harrington*, 28 Vt. 130 ; and the money thus paid to Mussey can not be withheld by his Administrator from the party legally entitled to it.

II. As to the $1720.00 paid Mussey by the assignees at the request and by the direction of Low.

This claim was made by Mussey after Low's failure and assignment. He claimed that when Low's drafts matured, in order to pay them he was obliged to procure money of a broker by the name of De Grand, to whom he paid a bonus for the money to the amount of $1720. . Low claimed that by the agreement between them this was money which Mussey was bound to raise—that he (Low) had already paid the going rates of interest when Mussey got the notes discounted, and sent him only the net proceeds—and that it was usurious, and paying for money that Mussey was bound to furnish by his contract. Mussey claimed that it was merely reimbursing him for money

which he had paid out for Low. Upon consultation with Mussey and assurances from him (which need not here be more particularly referred to), Low assented to the payment of this amount by the assignees, and it was paid. If the report stopped at this point the question would arise, was this in fact usury paid to Mussey beyond the going rates which Low agreed to pay, and which Mussey had to pay to get his drafts discounted. But the report proceeds to state—"We find from the books of Mussey and the testimony of Low, that this claim of $1720 is not for cash that Mussey in fact paid out to raise money for Low; but that, in consequence of his agreement to raise $20,000 for Low, it became necessary for Mussey to raise money to carry on his own business, and that this $1720 *was in fact money paid out by him to raise funds to carry on his own business.*" Upon this finding of the referees, it is manifest that Mussey procured the payment of this sum from Low by falsehood and deceit—by pretending falsely that he had paid it out to procure money to meet Low's drafts, when in fact he had paid it to raise money for his own business. If Mussey had told the truth to the assignees and to Low—that he had paid this sum to raise money to carry on his own business (although obliged to do so in consequence of his engagements with Low), his claim for repayment would have been preposterous. And in this view of the facts it is needless to consider those points made by the defendant's counsel—that the agreement to pay the $1720 was the compromise of a doubtful claim,—was assented to by Low from hope of benefit to himself, and was a payment of what Mussey had been obliged to pay for Low. It was in fact money obtained by fraud, by false representations believed to be true, and thus securing the consent of Low, and it cannot now be withheld by Mussey's Administrator from the party legally entitled to it.

These two sums therefore, being money which the estate of Mussey has no right to retain, the question arises—has Low the right to sue for them, or is that right vested in his assignees.

I. As to the $1500 paid as usury. The note for $2500 was considered as an advancement, and was secured by the mortgage

from Low to Mussey given to secure the note of $25,000. Thus prior to the assignment Mussey held a mortgage securing this debt. By the assignment Low conveyed to the assignees this mortgaged property, and directed them by the assignment to pay this debt, and the other debts due to the assignees. Mussey was one of the assignees. The assignment was by a debtor of a part of his property to certain creditors to pay the debts he owed them, and apply the balance of the proceeds of the property as the debtor might direct ; the debtor at the same time directing such balance to be paid to certain creditors then specified. It was not a general assignment, nor subject to any general assignment law such as we now have. The whole power of the assignees was derived from the assignment. By that Low conveyed the mortgaged property to the assignees, and directed them to pay this debt to one of their number from its proceeds. They thus paid it. Can they recover it back?

It has frequently been decided in this state that the right to recover for money paid for usury is personal to the party paying it ; that it is in the nature of a tort, and the right to sue for it does not pass to assignees in bankruptcy, and that it can not be recovered by creditors through the trustee process. The opinion of Judge PRENTISS, in *Moore* v. *Jones*, reported in the 23 Vt. 739 (decided in the U. S. Dist. Ct. for Vt., Oct., 1848), has not been followed in this state, and the very point there held, that the right to sue for usury was in the nature of a contract and would pass to assignees in bankruptcy, has since been ruled the other way in *Nichols et al.* v. *Bellows*, 22 Vt. 581.

In *Nelson* v. *Cooley*, 20 Vt. 201, the Court held, where the plaintiff had given notes to the defendants, which included usury, and which were scured by a mortgage, and afterwards sold the mortgaged premises subject to the whole incumbrance and the grantee paid the notes, that the plaintiff could sue for and recover back the usury—that although the purchaser paid the notes, still in substance the payment was from the plaintiff's money, and he was really the party who paid the usury.

In this case the assignees took the property subject to the

mortgage to Mussey securing this debt.  By the assignment they were directed to pay it, and Mr. Low directed them to pay it.  Under our decisions it is claimed that without his direction, they could not legally refuse to pay it.  But however this may be, if, taking the property subject to the mortgage and for the purpose among others of paying this debt, they do pay it—we .think they must be regarded as paying it with Low's money, by his direction and for his benefit ; and that having carried out his intentions and directions they have not the right afterwards to repudiate the act and recover back the money.  That is a right personal to himself as the party who furnished the funds, and appropriated them for this particular use.  We regard this as coming within the principal of *Nelson* v. *Cooley* above cited.  Although the legal title to the property assigned vested by the assignment in the assignee and therefore was not in Low,—still it must be borne in mind that they took it subject to the mortgage and upon the express trust that they would pay this debt ; that they paid it with funds furnished by Low and in which he had the beneficial interest.  The statute has not received a narrow and literal construction, but has been held to mean the party who furnishes the money—who really pays the usury.

But there is another and very important consideration in this case.  Mussey died in January, 1856.  This debt appears to have been paid to him in 1853.  Neither before nor since his decease does it appear that either the assignees or the creditors of Low have demanded the repayment of this money to them ; nor have they interfered with the litigation of this claim, or with its prosecution by Mr. Low, or interposed any objection to its recovery by him.  It is now too late for them to present it to Commissioners, or to seek to enforce their rights to it if they had any.  After this lapse of time by which their rights, if any, have been barred, their assent to its collection by Low may be presumed.  They can not collect it off Mussey's estate.  This being so, upon what just ground can his estate refuse to pay it to Low?  If the Administrator could say that the estate was liable to be sued by the assignees—if in fact payment to Low would not

be a bar to any claim by the assignees, there would be more reason in the defence here interposed..

As to the claim of $1720.00. In the view we have taken of this debt, the reasons drawn from the decisions in this state upon the right of the party paying usury to recover it back do not apply. This must be regarded as money obtained from the assignees and from Mr. Low by fraud.

It was money that really belonged to Low, after the long neglect and omission of the assignees to make claim for its restitution, and when by lapse of time in the settlement of Mussey's estate all liability for its payment by the estate to them has become barred, we think that their assent to its collection by Low may be presumed; and thus the estate not being liable elsewhere is not at liberty to interpose the defence that they may be liable to the assignees. While this view is taken by some of my associates, there is still another that deserves consideration. It appears from the report of the referees that Mr. Low put into the hands of the assignees the sum of $2800 to be applied upon his debts; that this amount was not subject to or included in the assignment, but was held by them and paid out by Mr. Low's directions rather as his agents than as assignees. It does not appear that this sum was kept separate from the moneys received under the assignment, or that any particular debt was paid with it.

It appears however that in the payment of this sum of $1,720, the assignees acted wholly pursuant to the directions of Mr. Low; that they as well as he objected to its payment upon the ground that the claim as presented by Mr. Mussey, was usurious and ought not to be paid by them,—and that its allowance and payment was finally agreed upon between Mussey and Low, and paid by the assignees by the request and direction of Low. It is obvious from the report that the money would not have been paid without the consent of Low, and that it was paid because Low and Mussey agreed that it should be. When thus acting in obedience to Low's wishes and instructions, we think they ought to be regarded as paying the amount out of that fund

Ladd *v.* Lord et al.

over which Low had the control, independent of the assignment, and in which he had the right to direct, rather than out of that received under the assignment and in the disposition of which the terms of the assignment would govern. And although it does not appear that the payment was then expressly stated to be made out of that fund or upon that basis, still from the conduct of the parties, and in the absence of all proof to show any different application of this amount, we think the law will presume that this payment was made from that fund. If it were then regarded by the assignees as the payment of usury (and such the report clearly indicates was their view of it), then this presumption ought to be raised for their benefit, upon the ground that they would pay it from that fund, which by Low's consent, they could lawfully apply to the payment of usury, rather than from that as to which they either had no such right, or at least their right was doubtful. In this view, the payment was from a fund belonging to Low, and there is no obstacle to his recovering it back.

The judgment of the county court is affirmed, and the judgment to be certified to the probate court.