CITY LOAN COMPANY v. WILLIAM CHENEY and Another.[1]

May 10, 1895.

Nos. 9143—(26).

Usury.—Evidence.

> *Held,* that the evidence justified the finding that the sale by plaintiff to borrowers of its "common stock" is a mere cover for usury.

Appeal by plaintiff from an order of the district court for Hennepin county, Hicks, J., denying a motion for a new trial. Affirmed.

*Geo. T. Halbert* and *John W. Gilger,* for appellant.

*Albee Smith,* for respondents.

MITCHELL, J. Action to recover possession of personal property under a chattel mortgage executed by the defendants. The defense interposed was that the debt secured by the mortgage was usurious. It appears that, when the defendant William Cheney applied to the plaintiff for a loan of $500, he was required, as a

[1] Reported in 63 N. W. 250.

condition of obtaining the loan, to buy 13 shares of plaintiff's "common stock," at $2 per share, and that thereupon it loaned him $500, and no more, and took his note for $526, drawing interest at 10 per cent. per annum.   The only important question in the case is whether this professed sale of stock was a mere device to conceal usury.

The plaintiff professes to be a corporation.   The general nature of its business is "loaning money for a short time on security." The articles of association provide that "the number and amount of the shares of the capital stock shall be 800 shares of preferred stock of $25 each, and 15,000 shares of common stock of $2.00 each," but they are entirely silent as to who shall be entitled to preferred stock, and who to only common stock, or for what purposes the former may be issued.   The by-laws purport to provide that out of the profits arising from interest on loans there shall first be paid an annual dividend of 8 per cent. on preferred stock, and next a dividend of 5 per cent. on the common stock, before any salaries shall be paid to the officers of the company.   It appears that one Hiltgen, the president and treasurer of the company, holds all the preferred stock ($5,000) that has been issued.   In fact it is quite apparent from the evidence that Hiltgen is the "Company" and that the company is "Hiltgen."   It appears that the so-called "Company" never issues common stock except to borrowers, and never makes a loan except upon condition that the borrower buys a certain number of shares of common stock at par, the number of shares depending on the amount of the loan.   The evidence also tends to show that every time an extension or renewal is granted to a borrower he is required to buy some more stock.   No dividend has ever been paid on the common stock, and it has no market value.   The certificate for the stock which defendant was required to purchase on obtaining this loan seems to have remained in the possession of the company, with a blank assignment indorsed thereon signed by defendant.   No explanation is given why Hiltgen has received preferred stock for his money, while borrowers only receive common stock for theirs.

It does not require much discernment or practical business experience to read between the lines the real nature of this scheme. The evidence amply justified the trial court in finding that the pre-

tended sale of stock to defendant was a mere cover for usury, and that the money pretended to be received in payment of the stock was in fact exacted for the use of the money loaned. While it is true that usurious exactions made for extensions will not render the original loan usurious, yet evidence that borrowers were required to buy stock as a condition of obtaining such extension was competent for the purpose of characterizing similar exactions as a condition of obtaining the original loans.

It is urged that the allegations of the answer were not sufficiently specific, but we fail to discover that any objection to the admission of evidence was made on that ground. Neither do we think that the point is covered by any of the assignments of error.

Order affirmed.