CHARLES W. SANFORD, APPELLEE, v. SAMUEL C. HAWTHORNE
ET AL., APPELLANTS.

FILED NOVEMBER 15, 1919.    No. 20590.

Usury. The sale and purchase of property of any kind at a price clearly beyond its value as a condition for making a loan and for the purpose of enabling the lender to obtain more than the lawful rate of interest taints the transaction with usury.

APPEAL from the district court for Lancaster county: FREDERICK E. SHEPHERD, JUDGE. *Reversed, with directions.*

*T. J. Doyle* and *Strode & Beghtol,* for appellants.

*Reese & Stout, contra.*

DEAN, J.

Plaintiff recovered a judgment for $9,033.32 against defendants Samuel C. Hawthorne, R. R. Langley and John Wall on a negotiable promissory note made by them and payable to plaintiff's order. The note was dated October 1, 1908, and became due in one year. It drew 10 per cent. interest from maturity until paid, the first year's interest having been deducted when the loan was made. Aside from this no interest has ever been paid. The defense was usury. Defendants appealed.

Following are the principal facts: Upon the application of Hawthorne and Langley, plaintiff agreed to loan them $5,000 on substantially these conditions: First, that they would get John Wall to sign the note with them; second, that they would pay the interest at 10 per cent. for one year in advance; and, third, that defendants would take as a part of the loan an assignment of a judgment owned by plaintiff against a man named James Craig, Sr., for $125.65 that was obtained on October 4, 1898, in a justice of the peace court in Wahoo, Saunders county, and drawing 10 per cent. interest from date of its recovery. The judgment was assigned at a valuation of $200 as a part of the loan. The testimony is not clear as to whether the $5,000 note was signed on October 1, 1908, the day of its date, or on October 14, 1908, the day when the transaction was closed. In view of the record we do not think this point is material. On October 14, 1908, plaintiff gave defendants $4,300 in cash and a credit of $500 on the note for one year's interest in advance and an assignment of the Craig judgment, all as consideration for the note in question.

Defendants contend that the Craig judgment was of no value, and that it was used merely as a subterfuge to conceal a charge, in advance, of $700 for the use of $4,300 for one year. Respecting this judgment and on the question of value, plaintiff on the cross-examination frankly testified: "Q. You did your best to collect it? A. Yes, sir; at various times. Q. You never collected anything on it? No; I never collected anything on it, although I felt satisfied that it would be paid, because the man was a good worker and a skilful artisan and was making good wages. Q. Will you swear that there was ever an execution issued on that judgment, and that it went into the sheriff's hands? A. Yes, sir. Q. Do you know when? A. October 2, 1903, was the issuance, and October 10, 1903, was the return of the execution. It had been placed in the hands of J. R. Webster, sheriff, and returned October 10, 1903. Q. And returned 'no property found?' A. Yes, sir. Q. That is the only execution that was ever issued on it, was it? A. I am not positive whether there was one— Q. That is all you know about? A. I cannot recall whether one was executed within the succeeding five years; I do not recall. * * * Q. Now, Mr. Sanford, when these parties came to you to borrow this money, you knew that it was money they wanted, didn't you? A. Yes, sir; I knew they wanted to borrow money. Q. You knew they didn't want to buy any judgment, didn't you? you knew that? A. Well, I knew—no, they hadn't applied to me for the purchase of any judgment. * * * Q. And (you) told them about having a memoranda of a judgment in favor of your father, and that you claimed to own against a man named James Craig for $125 up in the justice court in Saunders county you say they got from you; now, that is all you gave them for the $5,000 note, wasn't it? A. No sir—oh, they had been told that, and they had agreed to take that judgment on October 1st. Q. Well, whatever that was, that was all you gave them for the $5,000 note, wasn't it? A. Yes sir; the

$4,300 in checks and an assignment of a two hundred and fifty odd dollar judgment. * * * Q. Then you charged interest for the judgment the same as you did for the $4,300 cash, didn't you? A. Yes, sir. Q. Ten per cent. a year? A. Yes, sir; they took a judgment that was bearing 10 per cent. they took that at $200; it was a judgment for $250, and it was bearing 10 per cent. * * * Q. After all the efforts you could put forth prior to this transaction with Langley and Hawthorne you were never able to collect any of this money from Craig? A. I never went after him very hard. One reason was because my time and efforts were pretty well occupied, and another thing I regarded him as ultimately good, for he had a good business and was a man of temperate habits, was not an old man, and was very industrious. I didn't regard * * * Q. Did you ever get from him the court costs you paid out in getting this judgment? A. No, sir. That goes with the collection of the judgment. * * * Q. Did you have any knowledge as to why it was that Craig wouldn't pay this judgment during the ten years that you had it? A. Well, no, except for the fact that he was using money for his—for the prosecution of his business. * * * Q. Didn't you follow him up at different times where he did work for farmers and try to get something from him? A. No, sir. * * * Q. Was he a married man? A. Yes, sir. * * * Q. Did you ever file a transcript of this judgment in the district court up there? A. I do not recall; I don't know how that is. Q. You never did yourself? A. I do not recall; it is too long ago; I don't recall that. I generally made it my custom to file transcripts. Q. And didn't you also make it your custom, Mr. Sanford, with these parties in making them a loan to always have some note of some amount in addition to 10 per cent. interest that you took out in advance that you required them to take as a part of the loan? A. No; that was not my custom. It had occurred, but it wasn't a general custom."

Defendants complain because the court of its own motion gave this instruction numbered 4: "The court instructs you that there is no sufficient evidence upon which you can find that the Craig judgment was of no value, and that its assignment was a mere disguise for the taking of usury. You will therefore disregard this defense and exclude from your consideration all evidence in that connection." Defendants also complain because this instruction numbered 2 requested by them was refused: "The jury is instructed in the matter of assignment of a judgment against one James Craig, by plaintiff to the defendants, at the time of the loan, if it finds from the evidence that this was not a *bona fide* purchase of the judgment, but, on the contrary, was a mere subterfuge to obtain a rate of interest in excess of 10 per cent. for the loan of the money, in such event this would be usury, and if the jury so finds, its verdict would be for the plaintiff, for $4,300."

We think the court erred in giving instruction numbered 4 and in refusing to give defendant's requested instruction numbered 2. From plaintiff's testimony alone it is incredible that the Craig judgment was of any value. It was obtained ten years before the loan was made, and five years from its date an execution was returned "no property found." It does not appear that, aside from the issuance of an execution, plaintiff ever tried to collect the judgment. Nor does it appear that he counted it of sufficient value, nor Craig's financial prospects of sufficient promise, to file a transcript in the office of the clerk of the district court at Wahoo. It sufficiently appears that defendants did not make an application to plaintiff to buy a judgment, but to obtain a loan. The transaction appears to us to be a device by the parties to evade the usury law. Rev. St. 1913, sec. 3350. The sale of property of any kind at a price beyond its value as a part of a loan as a pretext for obtaining more than the lawful rate of interest taints the transaction with usury, and in an action to

recover on such loan neither interest nor costs can be recovered. *Grosvenor v. Flax & Hemp Mfg. Co.*, 1 Green's Ch. Rep. (N. J.) 453; *Quackenbos v. Sayer*, 62 N. Y. 344; *Mosier v. Norton*, 83 Ill. 519; *Barry v. Paranto*, 97 Minn. 265.

The evidence does not support the judgment. It appears from plaintiff's evidence that he could not lawfully recover more than $4,300 if the case were to be tried again. The judgment is therefore reversed and the cause remanded, with directions that judgment be rendered in favor of plaintiff for $4,300, and that defendants recover their costs in the district court and in this court.

REVERSED.

LETTON and ALDRICH, JJ., not sitting.