FLORENCE TRAUERNICHT, LUCILE COATES HAMMEREL AND W. C. HAMMEREL v. M. S. KINGSTON AND OTHERS.[1]

October 12, 1923.

No. 23,499.

**Sale of stock at fictitious price device to obtain usurious interest.**

1. Where corporate stock is in form sold at a price in excess of its stock exchange value, the stock being listed and readily salable on any business day, and a note is taken for the purchase price at the highest legal rate, the purpose being to make a loan on which the vendor gets more than the legal rate, the device of a sale being a cover for usury, the form will be disregarded and the transaction will be *held* usurious as it is in substance.

**Findings sustained by evidence.**

2. The evidence sustains the finding of the court that the transaction under review, though it took the form of a sale of stock, and was valid on its face, was in fact a loan and usurious, the form used being a cover for usury.

**Restoration of money received unnecessary.**

3. The plaintiffs may have affirmative relief under our statute, which makes a usurious transaction void, and provides for a cancelation, without restoring as a condition to relief the money received.

Action in the district court for Itasca county. The case was tried before McClenahan, J., who made findings and ordered judgment in favor of plaintiffs. The motion of defendant M. S. Kingston for

[1]Reported in 195 N. W. 278.

amended findings and conclusions was denied. From an order denying his motion for a new trial, M. S. Kingston appealed. Affirmed.

*Washburn, Bailey & Mitchell,* for appellant.

*William E. MacGregor* and *Marshall A. Spooner,* for respondents.

DIBELL, J.

Action to cancel a note as usurious and to compel the surrender of security pledged as collateral. There were findings for the plaintiffs. The defendant appeals from the order denying his motion for a new trial.

1. When a transaction takes the form of a sale of property, in this case corporate stock, having a market price at which it may be sold on any business day, and the sale price is in excess of market value, for which sale price a note is given, the purpose being to cover usury, the apparent vendor being a lender in disguise and the buyer a borrower, the intent being that the vendor shall receive in addition to the legal rate of interest on the selling price the difference between the market and selling price, the transaction is usurious. Barry v. Paranto, 97 Minn. 265, 106 N. W. 911, 7 Ann. Cas. 984; Elwell v. Lund, 102 Minn. 166, 112 N. W. 1009, 1067.

2. The plaintiffs Florence Trauernicht and Lucile Coates Hammerel are sisters. The plaintiff W. C. Hammerel is the husband of the latter. He lives in Minneapolis. The defendant, M. S. Kingston, is the only defendant appearing on the appeal. He lives in Eveleth. Hammerel is the only plaintiff who personally participated in the transaction under investigation. He represented his coplaintiffs.

On June 18, 1921, the plaintiffs made to Kingston a note for $9,000 payable on or before July 20, 1924, bearing interest at the rate of 10 per cent per annum, which was then the highest legal rate. The plaintiffs received for it 100 shares of U. S. Steel common, then worth on the market about 74. They pledged as collateral certain interests in the Arcturus mine in Itasca county and two life insurance policies. A formal contract was made at the time reciting a sale of the stock at 90, and pledging the securities for the payment of the note.

The negotiations resulting in the $9,000 note and the accompanying contract commenced in March, 1921. On March 7 Hammerel wrote to Kingston, asking for a loan of $12,000, but indicating that $10,000 would be accepted. On March 10 Kingston answered, stating that he had taken up the matter with an associate in California; that it would take two weeks to determine whether he was interested in making such a loan; that he would want 10 per cent interest semiannually, and that he "might turn over U. S. steel common stock instead of cash which you would have to convert." Kingston was in Minneapolis on March 22 and took up the matter with Hammerel. The stock was then worth 82½.

A sale by Kingston of 100 shares of steel common at 90, though worth but 82½, on three years time on the plaintiffs' secured note, at 10 per cent semiannually, was valid. The plaintiffs might make such an investment if they chose. Kingston could agree to it if he chose. It was legitimate. But Kingston could not lend Hammerel $9,000 at 10 per cent, insisting as a condition that he take at 90 one hundred shares worth 82½, and avoid usury by clothing the transaction in the form of a sale. Whether the transaction was a loan or a sale is the question, and the trial court found it a loan.

Hammerel's testimony is that Kingston told him at Minneapolis, before consultation with his counsel, that he would have to take the stock at 90; that he complained that that made a "stiff rate of interest;" and that Kingston replied that it was "only about 12 per cent per annum over a period of three years." The stock was listed and could be sold on any business day. At no time between the beginning of the negotiations and their consummation did it come within a number of points of 90. Hammerel says that Kingston later told him, after consultation with his attorney, that the transaction could not be carried out as they had contemplated; that his counsel advised him "it would be usury; we have got to make this in the form of a sales contract." Kingston had been warned by his counsel of usury. He had not been advised that the infection of usury could be avoided by a change of outward form. He apparently had been advised, and correctly so, that he could make a straight sale of his stock at 90. He was not advised that he could

cover usury in such a way; nor would it affect the result had he been so advised.

In the correspondence which followed the Minneapolis meeting between Hammerel and Kingston, the latter referred to the transaction as a loan. In a letter to his counsel he referred to it as a loan. On the stand he referred to it as a loan. Unquestionably the first negotiations were for a loan. Hammerel was at no time buying stock upon speculation or for an investment. He wanted money. He wanted to borrow. He was in a hurry. He was asking that the matter be speeded, so that he could get money, or that an advance of money be made him.

The court found that a sale was not made, and that the form of the agreement, though of that effect, was a cloak for usury. The finding is well sustained by the evidence and has our approval. The statute imposes a drastic penalty for usury. The plaintiffs get some $7,000 or $8,000 for nothing without merit in themselves. There can be no judicial quarrel with legislative policy. The court does its duty when it carefully inquires whether there is a violation of the statute, and if there is gives to it the effect prescribed by the legislature.

3. The plaintiffs are in a court of equity asking the cancelation of their notes and the surrender of their securities for usury. They do not offer a return of what they have received. The general rule over the country is that a borrower on usury when he comes to a court of equity asking affirmative relief by way of the cancelation of an obligation or surrender of securities must restore the money actually received. This was the rule applied in Patterson v. Wyman, 142 Minn. 70, 170 N. W. 928. The case involved a North Dakota contract and the North Dakota law, not that of Minnesota, was applied as the case distinctly states. Our own rule, often announced, is that restoration need not be made. Scott v. Austin, 36 Minn. 460, 32 N. W. 89, 864; Exley v. Berryhill, 37 Minn. 182, 33 N. W. 567; Mathews v. Missouri, K. & T. Trust Co. 69 Minn. 318, 72 N. W. 121. It results from our statute that a usurious loan is void and that it may be so declared and evidence of it and securities pledged for its payment canceled. G. S. 1913, §§ 5807-5809.

In Missouri K. & T. Trust Co. v. Krumseig, 172 U. S. 351, 19 Sup. Ct. 179, 43 L. ed. 474, where the claim was that there must be restoration of the money received before relief would be given, the court, referring to the Minnesota statute, and the state adjudications upon it, said [at page 358]:

"We think it a satisfactory reply to such a proposition that the complainants in the present case were not seeking equity, but to avail themselves of a substantive right under the statutory law of the State."

Order affirmed.