## E. C. WARNER CO. v. W. B. FOSHAY CO. et al.

### No. 9294.

Circuit Court of Appeals, Eighth Circuit.

March 15, 1932.

Claude G. Krause, of Minneapolis, Minn. (Glen Stiles and Cobb, Hoke, Benson, Krause & Faegre, all of Minneapolis, Minn., on the brief), for appellant.

F. H. Stinchfield, of Minneapolis, Minn. (Clark R. Fletcher, Morris B. Mitchell, Thomas P. Helmey, Donald A. Holmes, and C. P. Randall, all of Minneapolis, Minn., on the brief), for appellees.

Before KENYON, VAN VALKENBURGH, and GARDNER, Circuit Judges.

GARDNER, Circuit Judge.

This is a suit in equity brought by E. C. Warner Company, a corporation, as plaintiff, against W. B. Foshay Company, a corporation, and C. J. Rockwood, as receiver of said W. B. Foshay Company, Public Utilities Consolidated Corporation, a corporation, and Joseph Chapman, as receiver thereof, as defendants, to determine the amount due appellant on certain promissory notes described in the complaint, and to foreclose on certain collateral pledged to the appellant as security for said notes. The parties will be referred to as they appeared in the lower court.

Defendants answered, asserting that the notes were tainted with usury, because of the nature of the transactions as a part of which they were given, and they asked that the notes be canceled and the collateral pledged to the plaintiff as security therefor be delivered up to the receiver defendants.

The lower court found the issues in favor of the defendants, and entered decree canceling the promissory notes and directing plaintiff to restore to the receiver defendants the property pledged as security therefor. From this decree the plaintiff has appealed, and in support of its assignments of error urges that (1) the plea of usury was not available to the defendant, and (2) that the finding of usury is not sustained by the evidence. We shall consider these contentions in the reverse order of their statement.

At the times in controversy in this suit, plaintiff was a Minnesota corporation with its principal place of business at Minneapolis, Minn.; defendant W. B. Foshay Company was a Delaware corporation with its principal place of business in Minneapolis, Minn.; and defendant Public Utilities Consolidated Corporation was an Arizona corporation with its principal place of business at Minneapolis, Minn. On November 1, 1929, each of the two last-named companies was placed in the hands of a receiver because insolvent, and at that time the property and assets of both these companies were taken over by the receivers, and the companies are being liquidated and their assets administered on by these respective receivers.

On August 23, 1929, the Foshay Company had overdrawn its account in the banks; it had no cash; and the value of its assets was only a small fraction of the amount of its liabilities. It had a large number of checks outstanding and no funds with which to meet them; it had obligations coming due which it could not meet. The company, being in desperate financial straits, applied, through its managing officer, W. B. Foshay, to Mr. E. C. Warner, who controlled and practically owned the plaintiff company, for assistance. Warner owned a residence property on Lake Calhoun, which Mr. Foshay knew he desired to dispose of. Foshay suggested that the Foshay Company would purchase the property as an inducement for the making of a loan by the Warner Company, to the Foshay Company, at a price of $378,000, although both the contracting parties then knew that the property did not exceed in value at that time

$250,000. As a further consideration for making this loan, Warner required the Foshay Company to purchase 8,000 shares of the class B stock of the Public Utilities Consolidated Corporation for $80,000. This stock, the court found, had no intrinsic value and no market value on August 23, 1929. These purchases were agreed upon as a part of the transaction as a result of which the plaintiff loaned the Foshay Company $500,-000. Thereupon the defendant Foshay Company agreed to pay plaintiff $529,093.38, according to the terms of sixty-six promissory notes due at various intervals between that date and April 10, 1931. These notes represented a loan of $500,000 made by the plaintiff to the Foshay Company. Interest at 7 per cent. per annum to maturity, amounting to $29,093.89, was added to the principal, thus making the aggregate of $529,093.89.

The Foshay Company, by its written contract of purchase, also agreed to pay Warner $378,000 as the purchase price of the Lake Calhoun property, plus 7 per cent. interest to maturity of the several payments specified in the contract, amounting in the aggregate to $395,231.31. It also gave to Warner, or his company, twelve promissory notes aggregating $80,603.63, which represented the purchase price of 8,000 shares of the stock of the Public Utilities Consolidated Corporation at $10 per share, plus 7 per cent. interest to maturity of the notes.

Plaintiff, at the time of the delivery of the sixty-six notes, gave the Foshay Company a check for $500,000, and at the same time received back from that company a check for $143,470.83, in payment of the prior obligations of that company to the plaintiff.

All of the notes and the contract for deed were made and delivered contemporaneously as a part of one transaction in the city of Minneapolis, Minn., where the contracts were to be paid and performed.

As a result of these transactions, the Foshay Company received cash or credit for $500,000, a contract for a deed to the Lake Calhoun property, and 8,000 shares of the class B stock of the Public Utilities Consolidated Corporation, in consideration for which it obligated itself to pay the plaintiff within twelve months $1,400,928.83.

To secure the payment of the sixty-six notes and the contract for deed, the Foshay Company pledged as collateral 635 shares of common stock of the Winget-Kickernick Company; 470 shares of common stock of the Foshay Trust & Savings bank; 22,647 shares of the class B stock of the Foshay Building Corporation; 333,629 shares of the class B stock of the Public Utilities Consolidated Corporation; 38,231 shares of the class B stock of the Leamington Hotel Corporation; a note for $50,000, and interest, of the Citizens' Light, Power & Water Company; a note for $150,000, and interest, of the Central American Power Corporation; a note for $300,000, and interest, of the Public Utilities Georgia Corporation; a note for $500,-000, and interest, of the Foshay Building Corporation; and an assignment of an equity in 100,000 shares of the Public Utilities Consolidated Corporation class B stock, which were being purchased under contract. These securities were turned over to the plaintiff, and were in its possession at the time of the trial of this suit.

Before the appointment of the receivers, the twelve notes for $80,502.54 given for the stock were paid, and $25,273.18 had been paid on this $500,000 loan represented by the sixty-six notes.

These negotiations were carried on by E. C. Warner on behalf of the plaintiff, and by W. B. Foshay on behalf of the W. B. Foshay Company. These men had known each other for many years, and the companies which they represented had had many business and financial dealings with each other. Plaintiff was controlled and practically owned by E. C. Warner, and the Foshay Company was controlled by W. B. Foshay. Mr. Warner was a successful business man and capitalist of wide experience. He had been on the board of directors of one of the large banks of Minneapolis for many years, and had served on its discount committee. Mr. Foshay was an organizer, promoter, and salesman. The principal business of the Foshay Company had been the purchase of utility property. It also purchased other income-producing properties, and sold its own stock and securities and the stock and securities of the Public Utilities Consolidated Corporation, besides other subsidiary and affiliated corporations.

The lower court found that, in order to procure this loan for $500,000, the Foshay Company was obliged to pay 7 per cent. interest; to buy the Lake Calhoun property for $378,000, although it was actually worth not to exceed $250,000; to buy 8,000 shares of Public Utilities Consolidated Corporation class B stock for $80,000, although it had no intrinsic or market value; to pay interest on all deferred payments at 7 per cent. per annum; and to deposit the collateral security herein referred to. The court concluded that

the whole transaction was a device to cover usury and to evade the usury laws.

The Minnesota statutes fix 8 per cent. as the maximum interest rate chargeable, and condemn as usurious all contracts for the loan of money requiring the payment of a rate in excess of that amount. Minn. St. 1927, §§ 7037, 7038, 7040.

The facts as found by the lower court are sustained by both direct and circumstantial evidence, and we accept them as the facts in this case.

■ So far as the form of the transaction is concerned, no usury is disclosed. Courts, however, are not bound by what the parties represent themselves to be doing, but will look beyond the mere form of the transaction to its substance. Usury is a moral taint, and no subterfuge, however cunningly devised, will be permitted to conceal it. If it appears that the transaction as disclosed by the testimony and the surrounding facts and circumstances was in substance a receiving or contracting for the receiving of usurious interest for a loan or forbearance of money, then, regardless of the forms or devices resorted to to conceal the character of the transaction, the parties thereto are subject to the consequences provided by the usury statutes. Gage v. J. F. Smyth Mercantile Co. (C. C. A.) 160 F. 425, 429; Bank of United States v. Owens, 2 Pet. 527, 7 L. Ed. 508; Lukens v. Hazlett, 37 Minn. 441, 35 N. W. 265, 266; Drew v. Skeena Lumber Co., 180 Minn. 358, 230 N. W. 819, 821; Missouri, K. & T. Trust Co. v. McLachlan, 59 Minn. 468, 61 N. W. 560; Pomplun v. Hudson, 177 Minn. 321, 225 N. W. 115; City Loan Co. v. Cheney, 61 Minn. 83, 63 N. W. 250, 251; Trauernicht v. Kingston, 156 Minn. 442, 195 N. W. 278, 279; Schrump v. Jennrich, 174 Minn. 204, 219 N. W. 86, 87; Kommer v. Harrington, 83 Minn. 114, 85 N. W. 939, 940; Low v. Mussey's Estate, 36 Vt. 183; Sanford v. Hawthorne, 103 Neb. 867, 174 N. W. 863.

Here the device attempted was to require the Foshay Company to purchase property of the plaintiff at an excessive price as a condition of making the loan in question. The excess in the price was in effect additional compensation for lending the money, and this is true, although the notes did not import a usurious interest rate. This court in Gage v. J. F. Smyth Mercantile Co., supra, said: "The question as to whether or not the cotton contracts were a scheme or device to cover usurious interest turned wholly upon the decision of a question of fact, and as this decision depended upon the acts and intentions

of the parties and the proper inferences to be drawn from the evidence this court on familiar principles will not reverse the finding unless some serious and important mistake appears to have been made in the consideration of the evidence."

In the instant case, a careful consideration of the evidence convinces that the lower court was justified in reaching the conclusion that it did from the facts, and from the facts so found it is clear that the plaintiff received a very substantial collateral advantage in the excess price exacted by it for the property which it required the borrower to purchase.

The Supreme Court of the United States, in the early case of Bank of United States v. Owens, supra, said: "A profit made, or loss imposed on the necessities of the borrower, whatever form, shape or disguise it may assume, where the treaty is for a loan, and the capital is to be returned at all events, has always been adjudged to be so much profit taken upon a loan, and to be a violation of those laws which limit the lender to a specified rate of interest."

■ The Minnesota decisions, in so far as they are based upon the Minnesota statutes, are binding on this court. In Lukens v. Hazlett, supra, that court had under consideration an alleged device to conceal a charge of usurious interest. In the course of the opinion it is said: "The rule of evidence in these usury cases is the same as in any other civil action. All that is required is a fair preponderance of evidence. And there is no device or shift on the part of the lender to evade the statute under or behind which the law will not look in order to ascertain the real nature of the transaction."

The same court in Drew v. Skeena Lumber Co., supra, reiterated the principle announced in the Lukens Case. In that opinion the court said: "It has been repeatedly held in this state that the trial court may go behind all devices and schemes adopted to hide usurious transactions under the cloak of documents having the semblance of legality."

In City Loan Co. v. Cheney, supra, the Supreme Court of Minnesota held that a loan conditioned upon a collateral sale at an enhanced price for the purpose of concealing an unlawful rate of interest was usurious. In the course of the opinion in that case the court said inter alia: "It does not require much discernment or practical business experience to read between the lines the real nature of this scheme. The evidence amply justified the trial court in finding that the pre-

tended sale of stock to defendant was a mere cover for usury, and that the money pretended to be received in payment of the stock was in fact exacted for the use of the money loaned. While it is true that usurious exactions made for extensions will not render the original loan usurious, yet evidence that borrowers were required to buy stock as a condition of obtaining such extension was competent for the purpose of characterizing similar exactions as a condition of obtaining the original loans."

The issues in Kommer v. Harrington, supra, were somewhat similar to those in the instant case. In that case the trial court found that a collateral sale at an excessive price was a device to conceal usury, and held the transaction void. In approving this finding and conclusion of the trial court, the Supreme Court of Minnesota said: "If Kommer told the truth, the horses were sold to him at an exorbitant price, as a condition to an extension. If Rue was truthful, the sale was for no such purpose. The jury passed upon the question, and the defendants must abide by that decision. And the circumstances surrounding the sale of the horses were such as to justify the belief that the sale was nothing but a subterfuge to compel Kommer to pay Rue an unlawful rate of interest. It has been said by this court, under similar circumstances, that there is no device or shift on the part of the creditor under or behind which the law will not look in order to ascertain the true character of such a transaction."

The recent decisions of the Supreme Court of Minnesota clearly show that that court adheres to the rule announced in its earlier decisions. Thus, in Trauernicht v. Kingston, supra, the court said: "But Kingston could not lend Hammerel $9,000 at 10 per cent. insisting as a condition that he take at 90 one hundred shares worth 82½, and avoid usury by clothing the transaction in the form of a sale. Whether the transaction was a loan or a sale is the question; and the trial court found it a loan."

In Schrump v. Jennrich, supra, the Supreme Court of Minnesota considered a collateral agreement in the form of a sale, but held that the transaction was really a loan. In the course of the opinion it is said: "If the transaction was really a sale to Jennrich with an agreement to repurchase, a genuine understanding to that effect, it was valid, although Jennrich would profit beyond the legal rate of interest if the contract were completed. If, on the other hand, the conveyance and agreement of sale and repurchase were

but a device whereby Jennrich was to get more than 8 per cent. per annum, there was usury. The circumstances justified the court in finding that it was really a loan transaction."

█ It appears that, at the time of the transaction here involved, the Foshay Company was in desperate financial straits, and required, not real estate, nor stock, but money. This was well known to the plaintiff. The transaction, so far as the Foshay Company was concerned, had but one purpose, and that was to enable it to secure the loan of money with which to meet its then impending obligations. In this situation the notes and contract here in question were executed, by which plaintiff intended to receive for the loan of money a usurious rate of interest. The notes were therefore void, unless, as contended by the plaintiff, the Foshay Company is precluded, by reason of the statutes of Delaware, from asserting the defense of usury.

Section 2621, Revised Code of Delaware, for 1915, provides that no corporation shall hereafter interpose the defense of usury in any action.

Section 78, chapter 65, Rev. Code 1915 (section 1992), as amended by 35 Del. Laws, 1927, c. 85, § 23, provides that: "No corporation or corporations shall plead any statute or statutes against usury in any Court of law or equity in any suit instituted to enforce the payment of any bond, note or other evidence of indebtedness issued or assumed by it."

Section 82 of this chapter (Rev. Code 1915, § 1996) reads as follows: "This Chapter and all amendments thereof shall be a part of the charter of every such corporation except so far as the same are inapplicable and inappropriate to the objects of such corporation."

As has already been observed, the statutes of Minnesota condemn all interest charges in excess of 8 per cent. as usurious, and there are no statutory provisions in Minnesota forbidding a corporation to make the defense of usury in any action.

█ The effect of the contention of plaintiff is that, although these contracts were made in Minnesota, and were to be performed in Minnesota, yet in determining their validity in an action thereon brought in Minnesota the courts must look to, and be governed by, the laws of Delaware. While plaintiff urges that it is because of a want of power in the Delaware corporation that these contracts should be held valid, it seems to us that this is misleading. To so hold the contracts valid in Minnesota, the court must clothe that corpo-

ration with power to make contracts in Minnesota, which neither domestic corporations nor individuals could lawfully execute in that state. Generally speaking, the powers of a foreign corporation are limited, not only by its charter and the laws of the state of its domicile, but also by the laws of the state in which it exercises its powers. In all its obligations it is subject to such local laws as are made applicable. When a corporation establishes a place of business in a state other than that of its creation, it must accept that domicile as individuals are required to do, subject to the respective burdens and restrictions imposed by the laws in force in that state. Confessedly, in a suit brought in Minnesota, the Minnesota statutes should govern, unless the Delaware statutes followed plaintiff into Minnesota and conferred upon it powers which could not lawfully have been exercised either by the domestic corporations of Minnesota or individual citizens of that state. Mutual Life Ins. Co. v. Liebing, 259 U. S. 209, 42 S. Ct. 467, 66 L. Ed. 900; Withers v. Greene, 9 How. 213, 221, 13 L. Ed. 109; Northwestern Mutual Life Ins. Co. v. McCue, 223 U. S. 234, 32 S. Ct. 220, 56 L. Ed. 419, 38 L. R. A. (N. S.) 57; DeWolf v. Johnson, 10 Wheat. 367, 6 L. Ed. 343; Scudder v. Union National Bank, 91 U. S. 406, 23 L. Ed. 245; Junction R. R. Co. v. Ashland Bank, 12 Wall. 226, 20 L. Ed. 385; Mills v. Allen, 133 U. S. 423, 10 S. Ct. 413, 33 L. Ed. 717; Bard v. Poole, 12 N. Y. 501; Gilbert v. Fosston Mfg. Co., 174 Minn. 68, 216 N. W. 778, 218 N. W. 451; Utah State Bank v. Stringer, 44 Idaho, 599, 258 P. 522; Pope v. Hanke, 155 Ill. 617, 40 N. E. 839, 28 L. R. A. 568.

The elementary principle is stated in Withers v. Greene, supra, as follows: "The contract in question having been made within the State of Alabama, and designed to be performed within that State, the lex loci contractus must justly be understood as entering into and controlling the effect of its stipulations, and having been sued upon within the same State, the lex fori must, in a great degree, regulate the mode of its enforcement."

■ The notes here involved were Minnesota contracts, accepted and payable at Minneapolis, Minn., and, in contemplation of law, there was written into them the Minnesota statutory provisions governing the rate of interest chargeable in that state.

■■ So considered, do the Delaware statutes constitute a valid defense to the charge of usury? It is to be noted in passing that the first quoted statute purports to be a procedural one. It denies a corporation the right to interpose the defense of usury. Manifestly, a procedural statute could not be given any extraterritorial effect under the rules of comity. The next quoted statute is of the same character, and refers to a question of pleading. These statutes have the effect of repealing the usury laws of Delaware in so far as Delaware corporations are concerned, and this is done by denying such corporations the right to plead usury. If given extraterritorial effect, they would conflict with the Minnesota laws. Under the Minnesota laws, the right to interpose the defense of usury belongs to corporations, as well as to individuals, and, if the plaintiff, a Minnesota corporation, can escape the penalties of the Minnesota laws by virtue of these Delaware statutes, then as to it the Minnesota laws may be annulled by a foreign statute. We think the rule of comity cannot be invoked to that extent. Mutual Life Ins. Co. v. Cohen, 179 U. S. 262, 21 S. Ct. 106, 107, 45 L. Ed. 181; United States Mortgage Co. v. Sperry, 138 U. S. 313, 11 S. Ct. 321, 328, 34 L. Ed. 969; Washington-Alaska Bank v. Dexter Horton Nat. Bank (C. C. A.) 263 F. 304; Stack v. Detour Lumber & Cedar Co., 151 Mich. 21, 114 N. W. 876, 878, 16 L. R. A. (N. S.) 616, 14 Ann. Cas. 112; Bard v. Poole, 12 N. Y. 501; Guilford v. Western Union Telegraph Co., 59 Minn. 332, 61 N. W. 324, 50 Am. St. Rep. 407; Warren v. First Nat. Bank, 149 Ill. 9, 38 N. E. 122, 125, 25 L. R. A. 746; Nathan v. Lee, 152 Ind. 232, 52 N. E. 987, 43 L. R. A. 820; Bank of Louisville v. Young, 37 Mo. 398; Fowler v. Bell, 90 Tex. 150, 37 S. W. 1058, 39 L. R. A. 254, 59 Am. St. Rep. 788.

In Mutual Life Insurance Co. v. Cohen, supra, the Supreme Court of the United States held that an insurance contract executed and to be carried out in the state of Montana by a corporation incorporated under the laws of New York was nevertheless governed by the laws of Montana. In the course of that opinion the court said: "Can it be that the state of New York, aware of the fact that other states and other countries might by their legislation properly prescribe terms and conditions of insurance contracts, meant by this legislation to restrict its local companies from going into those states and countries and transacting business in compliance with their statutes if in any respect they were found to conflict with the regulations prescribed for business transacted at home?"

This interrogatory the court answered in the negative.

In Warren v. First National Bank, supra, in an opinion by the Supreme Court of Illi-

nois, it is said: "The general laws and regulations of a state are intended to govern only within the limits of the state enacting them, and the state can have no power to give them extraterritorial force. * * * Where a state statute is enacted for the enforcement of a local policy only it will not be presumed that such statutory provisions were intended by the state, or by the shareholders forming the corporation, to enter into the charter contract, and to regulate the company in its transactions outside of the state, and they will not affect the validity of the dealings of the company in foreign states."

In Stack v. Detour Lumber & Cedar Co., supra, there was considered by the Supreme Court of Michigan an Illinois statute providing that: "No corporation shall hereafter interpose the defense of usury in any action." The Michigan court refused to give any extraterritorial effect to this statute, saying: "This section 11 seems to be designed for the enforcement of a local policy only, and not intended to operate outside of the state under the decisions of the Supreme Court of Illinois. * * * Usury laws have been uniformly held to be local and having no extraterritorial effect. It necessarily follows that statutes designed to enforce compliance with such laws must be restricted to a local operation."

In United States Mortgage Co. v. Sperry, supra, the court said: "Laws regulating the rate of interest necessarily depend upon the condition of the people in the particular states or communities enacting them. Such laws express the policy of the respective states upon that subject."

In Bank of Louisville v. Young, supra, the charter of a Kentucky bank contained provision that "said bank should not contract for or receive a greater interest than at the rate of six per cent. per annum, for the loan or forbearance of money." The usury laws of Kentucky provided that loans at a greater rate than 6 per cent. were void. The Bank of Louisville, however, had made a loan at 10 per cent. in Missouri, which the Missouri court held was valid. Respecting the provision of the charter relative to interest, the Kentucky court said: "The charter obliges the plaintiff to observe the laws of Kentucky regarding interest as to loans and contracts made within the jurisdiction of that State; but it is not required to comply with the laws of that State on the subject of the rate of interest in making contracts in other States, and which are there to be performed. As to these latter contracts the lex loci contractus governs."

In addition to the fact that these statutes on their face indicate that they are precedural, we think it fair to infer that it was not the intention of the Delaware Legislature to give them extraterritorial effect. It is insisted, however, that they should be given such effect because section 82, chapter 65, Revised Code of Delaware for 1915 (section 1996), above referred to, provides that: "This Chapter and all amendments thereto shall be a part of the charter of every such corporation." It is first to be observed that immediately following the above quoted words, appear the following: *"except so far as the same are inapplicable and inappropriate to the objects of such corporation."* (Italics ours.) We think it might well be said that the provisions relative to the right of a Delaware corporation to plead usury are inappropriate and inapplicable to the contracts of that corporation made in Minnesota, to be there performed and which are there sued upon.

It is not every provision in a charter of a corporation that is protected and will be enforced in a foreign state under the rule of comity. It is only such charter provisions as constitute the agreement between it and its stockholders which will be recognized as binding in other states. Guilford v. Western Union Telegraph Co., 59 Minn. 332, 61 N. W. 324, 50 Am. St. Rep. 407; Washington-Alaska Bank v. Dexter Horton Nat. Bank (C. C. A.) 263 F. 304; Second Russian Insurance Co. v. Miller, 268 U. S. 552, 45 S. Ct. 593, 69 L. Ed. 1088; Fowler v. Bell, 90 Tex. 150, 37 S. W. 1058, 39 L. R. A. 254, 59 Am. St. Rep. 788; Whitford v. Panama R. Co., 23 N. Y. 465. The rule of comity merely enables the incorporators to exercise the franchise for acting in a corporate capacity in foreign states. The extent of this franchise is determined by the agreement entered into when the charter was issued and accepted. The laws of the state where the corporation was formed are regarded only so far as they determine the scope and validity of the agreement of the incorporators. The Delaware statutes, even considered as a special provision of the charter, were manifestly enacted for the enforcement of a local policy only, and it cannot be presumed that such a provision was intended by the state of Delaware, or by the incorporators of the Foshay Company, to enter into the charter contract and to regulate that company's transactions outside of the state of Delaware; but the provision reserved in the state the right, by appropriate legislation, to amend or modify the powers conferred by the charter. As said by Chief

Justice Marshall in Bond v. Jay, 7 Cranch, 350, 353, 3 L. Ed. 367: "It is so unusual for a legislature to employ itself in framing rules which are to operate only on contracts made without their jurisdiction * * * that Courts can never be justified in putting such a construction on their words if they admit of any other interpretation which is rational and not too much strained."

█ Legislation is presumptively territorial only, and confined to the limits over which the lawmaking power has jurisdiction. Sandberg v. McDonald, 248 U. S. 185, 39 S. Ct. 84, 63 L. Ed. 200; American Banana Co. v. United Fruit Co., 213 U. S. 347, 29 S. Ct. 511, 53 L. Ed. 826, 16 Ann. Cas. 1047.

█ But there is a further reason why the Delaware statutes should not be held to be a part of the charter in such a sense that they should be given effect in sister states. The regulation of interest charges by the state, and the enactment of usury laws, involve the exercise of the police power of the state. Griffith v. Connecticut, 218 U. S. 563, 31 S. Ct. 132, 133, 54 L. Ed. 1151; Missouri, K. & T. Trust Co. v. Krumseig, 172 U. S. 351, 19 S. Ct. 179, 182, 43 L. Ed. 474; Althaus v. State, 99 Neb. 465, 156 N. W. 1038; State v. Cary, 126 Wis. 135, 105 N. W. 792, 11 L. R. A. (N. S.) 174; Ex parte Washer, 78 Cal. App. 759, 248 P. 1068.

In Griffith v. Connecticut, supra, in an opinion by Mr. Justice White, it is said: "It is elementary that the subject of the maximum amount to be charged by persons or corporations subject to the jurisdiction of a state for the use of money loaned within the jurisdiction of the state is one within the police power of such state.

The Supreme Court of the United States in Missouri, K. & T. Trust Co. v. Krumseig, supra, in considering the Minnesota usury statutes, said: "With the policy of the state legislation the federal courts have nothing to do. If the states, whether New York, Arkansas, Minnesota, or others, think that the evils of usury are best prevented by making usurious contracts void, and by giving a right to the borrowers to have such contracts unconditionally nullified and canceled by the courts, such a view of *public policy* [italics ours], in respect to contracts made within the state and sought to be enforced therein, is obligatory on the federal courts, whether acting in equity or at law."

█ The police power of a state cannot be surrendered or alienated by any contract or device. No Legislature can control the power of its successors to make such laws as they may deem proper as police regulations. Manifestly, it is not to be presumed that one state would attempt to exercise the police power of another state. Missouri, K. & T. R. Co. v. Oklahoma, 271 U. S. 303, 46 S. Ct. 517, 70 L. Ed. 957; Denver & R. G. R. Co. v. City and County of Denver, 250 U. S. 241, 39 S. Ct. 450, 63 L. Ed. 958; Atlantic Coast Line R. Co. v. Goldsboro, 232 U. S. 548, 34 S. Ct. 364, 58 L. Ed. 721; Chicago & A. R. Co. v. Tranbarger, 238 U. S. 67, 35 S. Ct. 678, 59 L. Ed. 1204; Texas & N. O. R. Co. v. Miller, 221 U. S. 408, 31 S. Ct. 534, 55 L. Ed. 789; Boston Beer Co. v. Massachusetts, 97 U. S. 25, 24 L. Ed. 989; Stone v. Mississippi, 101 U. S. 814, 25 L. Ed. 1079.

█ If the contention of plaintiff be accepted, however, the state of Delaware has enacted a police measure controlling in Minnesota, irrevocable by a Minnesota Legislature, although a Minnesota Legislature would be powerless to tie the hands of succeeding Legislatures. This court in Marrs v. City of Oxford, 32 F.(2d) 134, 138, 67 A. L. R. 1336, said: "The police power is an attribute of sovereignty." We are not convinced that the state of Delaware can impose upon the state of Minnesota a statute which, if given the effect contended for, must result in the foreign state exercising a portion of the police power of the state of Minnesota, and to that extent its sovereign power. But it is asserted that the Delaware statutes are not contrary to the public policies of Minnesota, and hence, under the rule of comity between the states, the Foshay Company should be permitted to exercise its charter powers in Minnesota. The contention is based upon Minnesota cases which hold that the defense of usury may be waived by failing to plead it (Adamson v. Wiggins, 45 Minn. 448, 48 N. W. 185; Babcock v. Murray, 58 Minn. 385, 59 N. W. 1038), and upon cases which have upheld contracts bearing interest in excess of the rate permitted by the Minnesota statutes, where the laws of the state governing the contract permitted the particular rate of interest (Mueller v. Ober, 172 Minn. 349, 215 N. W. 781; Ames v. Benjamin, 74 Minn. 335, 77 N. W. 230; Gilbert v. Fosston Mfg. Co., 174 Minn. 68, 216 N. W. 778, 218 N. W. 451; Green v. Trust Co., 128 Minn. 30, 150 N. W. 229, L. R. A. 1916D, 739). Because the defense of usury may be waived in Minnesota if not pleaded, plaintiff insists that usury is not illegal or against public policy in that state. This conclusion we think wholly unwarranted. Although the courts of Minne-

sota have held that the defense of usury must be pleaded, it does not follow that, when such defense is pleaded, the refusal to enforce the contract, if found to be usurious, is not founded upon a rule of public policy as embodied in the Minnesota statutes. True, the Minnesota courts have not refused to enforce the interest statutes of another state where its laws govern the contract, and have permitted a rate of interest in excess of the lawful rate in Minnesota, but that has no bearing on the question here at issue. There is here involved the question as to whether, in enforcing a Minnesota contract, the laws of Minnesota or those of Delaware shall be applied. The Minnesota decisions cited support the contention of defendants, rather than that of the plaintiff, for they hold that the laws of the state of the contract must be applied in determining the rights of the parties. No authority is cited by plaintiff from Minnesota or any other jurisdiction, holding that, where a contract is made, delivered, and to be performed, in one state, and the action is brought upon it in that state, its statutes should be displaced by the statutes of another state in determining whether the contract is usurious or not. It would be an anomalous situation, indeed, if the rule of comity should go so far as to require the enforcement of a contract in favor of a nonresident doing business within a state that the courts of that state would not enforce in favor of one of its own citizens.

We are of the view that the lower court properly held that the defendants were not precluded from pleading the usury statutes of Minnesota in defense of the notes sued upon. It follows that the judgment appealed from should be, and is, affirmed.