# Meyer Brothers *v.* Cook.

*Bill in Equity by Wife, against Mortgagee of Husband, for Personal Property.*

1. *Offspring of mortgaged animals.*—A colt, brought forth while its dam is under mortgage, passes immediately under the incumbrance;

27

[Meyer Brothers v. Cook.]

and the title of the mortgagee does not cease when the colt, increasing in strength and maturitv, ceases to follow the dam.

2. *Animals purchased with wife's statutory funds, and exchanged for others.*—When a horse, or other domestic animal, is bought and paid for with money belonging to the wife's statutory estate, but no written evidence of title is taken, it becomes a part of the *corpus* of her statutory estate; and if the animal is afterwards exchanged for another by her husband, with her knowledge and approval, by verbal contract only, though she does not acquire a legal title to the animal obtained by the exchange, she may ratify the exchange, and assert an equitable title to the animal.

3. *Usury in mortgage; protection to mortgagees as bona fide purchasers.* When the debt secured by a mortgage is tainted with usury, the mortgagee can not claim protection, as a *bona fide* purchaser, against a secret equity of which he had no notice. (CLOPTON, J., dissenting )

4. *Same; purchase for cash by mortgagee, charged to mortgagor at advanced price.*—If the mortgagee purchases a mule at the instance and request of the mortgagor, paying $102.50 cash, and charging it in his account for advances at $130, this makes the mortgage usurious.

APPEAL from the Chancery Court of Dallas.

Heard before the Hon. S. K. McSPADDEN.

The bill in this case was filed on the 24th December, 1884, by Mrs. Octavia Cook, a married woman, who had been relieved of the disabilities of coverture, against Meyer Brothers, partners in trade as merchants; and sought to establish the complainant's alleged equitable title to a mare and two colts, and to enjoin an action at law which the defendants had brought to recover the animals. The complainant claimed the animals, on the ground that, "five or six years" before the filing of the bill, and after her marriage, she bought a mule, paying for it with moneys belonging to her statutory estate; that this mule was afterwards exchanged for a horse, which was in turn swapped for another, the mare being thus obtained after several exchanges, and the colts being her offspring. The defendants claimed the animals under a mortgage for advances to make a crop, executed to them by Albert Cook, the complainant's husband, which was dated 25th January, 1881, and contained a power of sale on default. The mortgage conveyed the mare, called *Hester*, with other property; the colts having been foaled after the date of the mortgage, and one of them after the commencement of the suit. The defendants denied the facts on which the complainant based her claim to the animals, and also claimed protection as *bona fide* purchasers without notice; while the complainant alleged and insisted that they were chargeable with notice, actual and constructive, and that the mortgage was usurious. On final hearing, on pleadings and proof, the chancellor held and decreed that the com-

plainant had failed to establish her equitable right to the mare; that the defendants were innocent purchasers of the mare, "and of any colts foaled since they recovered possession of the mare; but, as to any colt foaled between the date of the mortgage and the recovery of the possession of the mare by the defendants, the complainant is entitled to recover in this suit." The defendants appeal, and assign the latter part of the decree as error.

WHITE & WHITE, for appellants, cited *Rogers v. Adams*, 66 Ala. 600; *Harrison v. Johnson*, 27 Ala. 445; *Adams v. McKenzie*, 18 Ala. 698; *Wortham v. Gurley*, 75 Ala. 356; *Patterson v. Kicker*, 72 Ala. 406; *Fowler v. Merrill*, 11 How. 375; 46 Mich. 131; 8 Gill & J. 39; *Leavit v. Jones*, 54 Vt. 423; Story on Bailments, § 292; 2 Wait's A. & D. 127; 9 B. Mon. 124.

T. B. ROY, *contra*, cited *Loeb v. McCullough*, 78 Ala. 535; *Bolman v. Overall*, 80 Ala. 451; *Evans v. English*, 61 Ala. 416; *Pollak v. Graves*, 72 Ala. 347; *Kennon v. Dibble*, 75 Ala. 351; *Bolling v. Mock*, 35 Ala. 729; *Patterson v. Kicker*, 72 Ala. 407; *Tutwiler v. Montgomery*, 73 Ala. 268; *Brunson v. Brooks*, 68 Ala. 252; *Wailes & Co. v. Couch*, 75 Ala. 134; *McCall v. Rogers*, 77 Ala. 349; *Miller v. Bates*, 35 Ala. 580; *Collier v. Barr*, 64 Ala. 543.

STONE, C. J.—The general rule of law is, that the off-spring, or increase of female animals, when they come into visible existence and are endowed with independent life, rest under the same title or ownership their dam was subject to, at the time they were brought forth. *Partus sequitur ventrem.*—*Gans v. Williams*, 62 Ala. 41. Hence it has been often held that, if the dam, at the time of parturition, be under mortgage incumbrance, the offspring passes immediately under the same incumbrance.—*Hughes v. Graves*, 1 Litt. (Ky.) 317; *Forman v. Proctor*, 9 B. Mon. 124; *Fowler v. Merrill*, 11 How. U. S. 375; *Evans v. Merriken*, 8 Gill. & J. 39; *Leavitt v. Jones*, 54 Vt. 423; *Gundy v. Biteler*, 6 Bradw. (Ill.) 510; Jones Chat. Mortg. §§ 149, 150.

The attempt has been made to draw a distinction, when, during the time the property remained with the mortgagor, the offspring so increased in strength and maturity as. to cease to follow the dam. In such case, it has been contended that the mortgage ceases to bind the offspring. We are at

[Meyer Brothers v. Cook.]

a loss to conjecture on what principle such a distinction can be maintained. We apprehend, however, that all such seeming rulings rest on an entirely different principle. The exception has been allowed only in favor of *bona fide* purchasers, who, finding such offspring in the possession of the mortgagor, arbiter of its own movements, and not following its dam, purchased and paid for the same, without notice of the mortgage lien. Such offspring not being mentioned in any recorded mortgage, and there being nothing visible to put the purchaser on inquiry, it was ruled that it would be a fraud on him to take from him the property he had bought and paid for in good faith, and without notice.—*Winter v. Landphere*, 42 Iowa, 471; *Kellogg v. Lovely*, 46 Mich. 131. This principle sheds no light on the present case, for Mrs. Cook does not sustain such relation to the property.

The chancellor denied to complainant relief as to the mare *Hester*, and to the colts she dropped after Meyer Bros. obtained possession under the mortgage. He said: "It is adjudged, ordered and decreed, that the complainant has failed to establish or make out her right to the mare mentioned in said mortgage. As to said mare, defendants are innocent purchasers; and as to any colts foaled since the recovery of possession of the mare by the defendants, complainant has no claim. But, as to any colt foaled between the date of the mortgage and the recovery of the possession of the mare by the defendants, the complainant is entitled to recover in this suit." Under this ruling, he decreed one colt to the complainant; and from that decree defendants prosecute this appeal.

Under the principle declared above, if the defendants were entitled to the mare under their mortgage, they were equally entitled to the colts, whether foaled prior or subsequent to obtaining possession by them. We have, then, to inquire whether complainant has shown an equitable right to recover the mare; for on that right must depend her claim of property in the colt.

We think the testimony proves that mules were purchased by Mrs. Cook from Robbins, and paid for with effects or moneys which were of her statutory separate estate, and that no title papers were taken. The mules, then, were of the *corpus* of her statutory separate estate. Commencing then with one of these mules, Cook, her husband, made several exchanges, ending with the possession of the mare *Hester*, dam of the colt in controversy. Mrs. Cook had knowledge

of, and approved these several exchanges, but no paper evidences of title were given or received. She claimed the mare as her property. Under our decisions, the legal title of the mare was not in Mrs. Cook; but she had an equitable right to trace her money or effects into the mare, or to ratify the exchange, and claim the mare as equitably hers.—*Bolling v. Mock*, 35 Ala. 727; *Preston v. McMillan*, 58 Ala. 84; *Evans v. English*, 61 Ala. 416; *Pollak v. Graves*, 72 Ala. 347; *Kennon v. Dibble*, 75 Ala. 351; *Shelby v. Tardy*, 84 Ala. 327.

The doctrine declared above being but an equity—a secret equity, as it is phrased in the books—it will not prevail over a *bona fide* purchase without notice; and it is claimed for Meyer Bros. that they are *bona fide* purchasers without notice. We think, under the testimony, they have proved that they are purchasers. This shifted the *onus* on the defendant, to prove notice, or its equivalent. There was an atempt to prove actual notice to Meyer Bros., but the testimony is in such conflict that we prefer to rest our decision on another principle.

It is contended for appellee, that Cook's debt, secured by the mortgage, is tainted with usury, and therefore Meyer Bros. are not *bona fide* purchasers, so as to cut off equitable defenses. If the facts be as alleged, the legal result contended for must follow.—*Carlisle v. Hill*, 16 Ala. 398; *Saltmarsh v. Tuthill*, 13 Ala. 390; *Wailes v. Couch*, 75 Ala. 134; *McCall v. Rogers*, 77 Ala. 349.

It is shown in the testimony, without conflict, that there were dealings between Meyer Bros. on one side, and Albert Cook, husband of complainant, on the other, commencing as early as 1877, and continuing to the close of 1881. The dealings consisted in advances made by Meyer Bros. each year, and payments made by Cook at the close of each season. At no time did Cook make entire payment; and the balances were severally carried forward, and made charges in the account of the next succeeding year. According to the testimony of Meyer Bros., the unpaid balance due to them at the close of 1879 was the sum of $680.55, charged in the account of 1880. The unpaid balance of the account of 1880, thus carried forward and charged in the account of 1881, was $265.61. A note was given for this, including an additional sum to cover prospective advances, and a mortgage given by Albert Cook on the mare *Hester*, and other property, to secure its payment. One item in the account of

[Mobile & Montgomery Railway Co. v. Gilmer.]

1880, bearing date in January of that year, is one mule, $130. This is one of the items of the account which left, at the close of the season, the unpaid balance of $265.61. That mule was purchased from Johnson for $102.50, and paid for by Meyer Bros. Three witnesses were examined in reference to this transaction. M. Meyer testifies, that he purchased the mule for cash, and sold it to Cook on a credit, for $130, agreed on. He admits he purchased the mule for Cook, and that Cook had informed him of the particular mule, that it was for sale, and requested him to purchase it for him. Albert Cook testifies, that he alone negotiated the purchase, agreed on the price, and that, at his request, Meyer paid Johnson for the mule. He testifies, further, that there was no agreement as to what he was to pay Meyer. Johnson testifies, that he and Cook negotiated and agreed on the terms of sale; that at Cook's request he called on Meyer for the agreed price—$102.50; that Meyer paid him, and that he, Johnson, then delivered the mule to Cook. Under this testimony, we hold that the transaction was a loan, or advance of money by Meyer Bros. to Cook; and the interest charged being in excess—greatly in excess—of 8 per cent. *per annum*, the note is tainted with usury; and this overcomes the defense of *bona fide* purchase.—*Collier v. Barr*, 64 Ala. 543.

In recovering the colt, Mrs. Cook got no more than she was entitled to, and the decree of the chancellor must be affirmed.

CLOPTON, J., dissents from that part of the foregoing opinion, which holds that usury in the debt secured by the mortgage precludes Meyer Bros. from making the defense of *bona fide* purchase.