# Dyer *v.* The State.

*Indictment for Removing Mortgaged Property.*

1. *Mortgage for advances, past, present, or future; sufficiency of con-sideration.*—A mortgage given to secure the payment of money ad-vanced to make a crop, reciting a present advance and receipt, may be supported, as between the parties, by proof of subsequent advances, although there was no past or present advance or indebtedness.

2. *Mortgage of cattle, offspring of females; variance.*—The offspring of cows, or other female animals, which have been conveyed by mortgage, are equally subject to the incumbrance; and on prosecution for remov-ing mortgaged property, described in the indictment as two cows and two calves, a mortgage executed one year previously, conveying two cows only, is admissible as evidence.

3. *Re-calling witness; what is revisable.*—It is discretionary with the trial court to permit a witness to be recalled, even after the oral charge of the court has been given, and the exercise of this discretion is not revisable.

4. *Declarations of wife, as evidence for husband.*—The declarations or instructions of the defendant's wife, to the witness by whom the mort-gaged cotton was hauled to the gin, where a part of it was destroyed by fire, are admissible as evidence for him, when it appears that she was acting as his agent, and also as agent for the mortgagee.

5. *Destruction of mortgaged cotton by fire, at gin-house.*—When mort-gaged cotton is destroyed by fire at the gin-house, the loss falls on the mortgagor, unless it was delivered there by instructions of the mortgagee.

FROM the Circuit Court of Cherokee.

Tried before the Hon. JOHN B. TALLY.

The indictment in this case was found on the 1st October, 1886, and charged that the defendant, Cap. Dyer, with the intent to hinder, delay and defraud James D. Kirkpatrick, "did sell or remove personal property, consisting of two cows and two calves, and 1100 pounds of seed-cotton, of the value of $35," on which property said Kirkpatrick had a mortgage, or written lien for advances, of which lien or mortgage defendant had knowledge. The verdict of the jury was in these words: "We, the jury, find the defendant guilty as charged in the indictment, and assess the value of the property as follows, to-wit, two cows and calves, at $20;" and the court thereupon sentenced the defendant to the peni-tentiary for the term of one year. On the trial, as the bill of exceptions shows, Kirkpatrick was introduced as a witness for the prosecution, and testified that the defendant was indebted

to him in about the sum of $57, balance due for advances to make a crop, during the year 1884, on a small tract of land in the county on which defendant then lived; and having produced the mortgage given by defendant that year, he further testified that the defendant was not indebted to him at that time for past advances, and that no advances were then made to him. The mortgage, which was dated April 7th, 1884, recited an indebtedness of $100 for advances "this day received from James D. Kirkpatrick." The defendant objected to the admission of the mortgage as evidence, "on the ground that it is shown to be without consideration, and void;" and he excepted to the overruling of his objection. The mortgage conveyed the tract of land, containing eighty acres, all the crops raised on it during the year 1884, and two cows, described as "one red cow and one pied cow." It appeared that the defendant moved, with his family, in October, 1884, across the line into Georgia, his boys driving "the cattle," as the witnesses called the animals. Kirkpatrick, who owned a store in Alabama and another in Georgia, ten or fifteen miles apart, testified that he saw defendant after his removal to Georgia, "and asked him about the cattle;" and that defendant replied, they were "down at the house." W. Farmer, another witness for the State, testified: "I know defendant, and knew some of his cattle; one was a red pied cow, and another was a spotted cow, but I don't remember the other." A. Brooks, another witness for the State, testified: "In 1884-5 defendant lived this side of the Cross Roads, and owned two cows; one was a pale red with spots; don't recollect the color of the others; last saw them on the road going towards Georgia, when two of defendant's children were driving them. I have not seen the cattle since." This being all the evidence in relation to the cattle, the defendant moved the court "to exclude the mortgage as evidence, because there was a variance between it and that described in the indictment as being on cows and calves, and there was no proof that the cows were the same;" and he excepted to the overruling of his objection and motion.

It appeared, also, that the cotton raised on the place, about two bales, was hauled to Owen's gin-house, where one bale was ginned, and delivered to Kirkpatrick, or forwarded by his order to Rome, Georgia; and the residue was destroyed by fire, with the gin-house and all of its contents. On removing to Georgia, in October, 1884, the defendant went to

[Dyer v. The State.]

Kirkpatrick's house at Cave Spring, Georgia; and as to the interview between them Kirkpatrick thus testified on cross-examination: "He came to my house, and said he was going down to Carrollton, Georgia, to make brick. He told me he had shipped a bale of cotton for me to Rome, from Owen's Landing, but I never got it. He said there was a bale or more in the patch, and at the gin, and wanted to know what to do with it; and I told him to haul it to Owen's Landing, and ship it to Rome." Being afterwards recalled, he said, "I got one bale of cotton, and gave credit for it." On October 6th, the day after his interview with defendant, Kirkpatrick wrote a letter to Mrs. Dyer, defendant's wife, which was produced on the trial, and in these words: "Mr. Dyer was here yesterday, and told me to write to you about the bale of cotton; says for you to ship it to Rome, Georgia, to Montgomery, McLaurin & Co. Mark it *J. D. K.*, and ship it in my name." W. Farmer, a witness for the State, who hauled the cotton to Owen's gin-house, thus testified on cross-examination: "Kirkpatrick got some of the cotton, and I delivered about one-half bale more, which was burned with the gin. All the cotton made on Dyer's farm was carried to that gin, and there was enough for two good, heavy bales. Dyer had employed me to haul his cotton, and said that Mrs. Dyer would instruct me what to do with it. Mrs. Dyer told me the first bale was for Kirkpatrick. Dyer was not at home. He got me to haul the cotton before he left, and Mrs. Dyer was to tell me what to do with it. She told me it was for Kirkpatrick, and to tell Owen that she wanted it shipped to Rome, for Kirkpatrick—that he had written to her to deliver it at Owen's." The bill of exceptions then proceeds thus: "On rebutting examination, and in answer to a question by the solicitor, the witness stated that Mrs. Dyer gave him some instructions about the remainder of the cotton after shipping one bale for Kirkpatrick; to which evidence the defendant objected, and moved to exclude it from the jury. Thereupon, the solicitor moved the court to exclude all Mrs. Dyer had said, as related by the witness; which motion the court sustained, and excluded all the instructions and statements of Mrs. Dyer, as related by the witness; and the defendant duly excepted."

After the evidence was closed, and the court had charged the jury orally, Farmer was recalled, by leave of the court, and testified that the cows were "worth about ten dollars each;" and the defendant excepted to the admission of this evidence.

[Dyer v. The State.]

The defendant excepted, also, to the refusal of the following charges, which were asked by him in writing: (1.) "If the jury believe the evidence, they must acquit the defendant." (2.) "There is no proof that defendant sold or removed any cotton." (3.) "If the jury believe from the evidence that the defendant delivered cotton in the bale, and at the gin, enough to pay the mortgage debt, that was a discharge of the mortgage lien on the cows, and his removal of the cows would be no offense." (4.) "If the defendant delivered for Kirkpatrick, and to him, cotton sufficient to pay the mortgage debt, and part of it was burned up, this would be a discharge and satisfaction of the debt, and the defendant must be acquitted."

J. A. WALDEN, for appellant.—(1.) The testimony of the mortgagee himself showed that the mortgage was without legal consideration. (2.) The defendant was indicted and convicted for the fraudulent removal of two cows and two calves; but the record nowhere mentions any calves, except in the indictment and in the verdict. The mortgage mentions two cows only, and ought to have been excluded on account of the variance. The bill of exceptions purports to set out all the evidence, and no presumption can be indulged against this recital. The attention of the prosecution was called to this defect in the evidence, and no attempt was made to supply it. (3.) The declarations of Mrs. Dyer, or her instructions to Farmer, when hauling away the cotton, were a part of the *res gestæ*, and were made while she was acting as the agent of her husband, the defendant, and also of Kirkpatrick.—*Belmont C. & R. Co. v. Smith,* 74 Ala. 206; *Gr. So. Railroad Co. v. Hill,* 76 Ala. 303; *Bohannon v. Chapman,* 13 Ala. 641; *Lilly v. Fletcher,* 81 Ala. 234. (4.) If cotton was delivered at Owen's, enough to pay the mortgage debt, by instructions of the mortgagee, the debt was discharged, and there was no mortgage lien. The delivery of the cotton disproved any fraudulent intent in the removal of the cows.

WM. L. MARTIN, Attorney-General, for the State.—(1.) A mortgage to secure future advances is valid, and such consideration may be proved though a present advance is cited. *Dawson v. Higgins,* 50 Ala. 49; *Tison v. B .L. Asso.,* 57 Ala. 323; *Collier v. Faulk,* 69 Ala. 58; *Forsyth v. Preer,* 62 Ala. 443; *Huckaba v. Abbott,* 87 Ala. 409. (2.) The declarations of Mrs. Dyer were mere hearsay. (4.) The identity.

of the mortgaged property was a question for the jury. (4.) Recalling a witness, or allowing additional evidence, at any time before the jury retire, is matter of discretion. *Wesley v. State*, 52 Ala. 182; *Insurance Co. v. Moog*, 78 Ala. 284; *Drum v. Harrison*, 83 Ala. 384; 1 Whart. Ev. §§ 572-75. (5.) There was no proof of any instructions to deliver the cotton at the gin, so as to place the loss on the mortgagee.

SOMERVILLE, J.—1. The mortgage introduced in evidence purports on its face to have been given " in consideration of advances made for the year 1884, and to secure the same," reciting the amount to be the sum of one hundred dollars. Whether these advances had already been made, or were agreed to be made by the mortgagee, the consideration recited was *prima facie* sufficient, as between the immediate parties to the instrument.—1 Jones Mortg. (3d Ed.), § 64; *Collier v. Faulk*, 69 Ala. 58; *Huckaba v. Abbott*, 87 Ala. 409; *Lawson v. Alabama Warehouse Co.*, 80 Ala. 341. There being no evidence in rebuttal of this recital, the objection that the mortgage was void, for want of a legal consideration, was properly overruled.

2. The mortgage purports to be given on two cows, besides the crop of cotton and corn raised by the defendant, as mortgagor, during the year 1884, on his plantation in Cherokee county. The indictment charges that the mortgage lien covered two cows, and *two calves*. This was no variance, as the mortgage on the cows might cover calves which were the offspring or increase of the female parents after the execution of the conveyance. It is a settled rule, that the offspring of mortgaged animals, which are born after the making of the mortgage, are subject to the lien of such incumbrance, under the maxim, *partus sequitur ventrem*.—*Meyer v. Cook*, 85 Ala. 417; *Gano v. Williams*, 62 Ala. 41; Jones on Chat. Mortg. §§ 149-150. The inference is, that the witness, in speaking of " the cattle," had reference to those described in the indictment, including both cows and calves.

3. The recalling of the witness Farmer, to prove the value of the mortgaged animals, which was permitted to the State after the giving of the oral charge by the court, was within the discretion of the presiding judge, and furnishes no ground of reversible error.—*Phœnix Ins. Co. v. Moog*, 78 Ala. 286; *Drum v. Harrison*, 83 Ala. 384.

4. The court erred, however, in excluding the evidence

[Giles v. The State.]

as to the instructions given the witness Farmer by Mrs. Dyer, the wife of the defendant, as to hauling and shipping the mortgaged cotton. The evidence tended to show that she was acting as the agent both of the mortgagor, Dyer, and the mortgagee, in having the cotton shipped to Rome *via* Owen's Landing. Dyer, before leaving home, had authorized the witness Farmer to haul the cotton, and the latter was to get instructions from Mrs. Dyer. Under these circumstances, the instructions and acts of Mrs. Dyer, within the scope of her agency, ought to have been allowed to go to the jury.

5. There is no evidence from which it can be inferred that the mortgagee was to take the risk of the cotton while at Owen's gin, so as to cast on him the loss there sustained through its destruction by fire. His letter of instruction to Mrs. Dyer was, to have a bale of cotton shipped to Rome, Georgia; and his verbal instruction to Dyer himself was, to "haul the cotton to Owen's Landing, and ship it to Rome." The delivery at the gin, therefore, was not a delivery to the mortgagee at his subsequent risk. The charges based on this theory of the case were properly refused.

We have examined the exceptions taken to the other rulings of the court, and think they were properly overruled.

The judgment is reversed, and the cause remanded for a new trial. In the meanwhile, the defendant will be retained in legal custody, until discharged by due course of law.

