# McCarver, *et al. v.* Griffin.

## Detinue.

(Decided June 30, 1915. Rehearing denied November 18, 1915.
69 South. 920.)

1. *Mortgages; Animals; Increase.*—The offspring of animals, when they come into visible existence, and are endowed with independent life, pass at birth under the same title or ownership as the dam, and are subject to any existing encumbrance upon her.

2. *Same; Parties.*—As between the mortgagor and mortgagee, such offspring continue subject to the mortgage encumbrance, regardless of its age and development.

3. *Same; Bona Fide Purchaser.*—The bona fide purchaser of an offspring of an animal after its natural separation from the mother, is not bound by the registration of the mortgage upon the mother, but takes free from that encumbrance.

4. *Same; Notice.*—Where the action was detinue by a mortgagee for a colt born during the life of an encumbrance upon the mother which was bought from the mortgagor after a natural separation from the mother, the evidence in this case was sufficient to charge defendant with notice that the colt was subject to the mortgage on the dam.

5. *Pleading; Generic Term; Horse.*—The use in pleading of the word "horse," as a generic term, includes "mare" as well.

6. *Appeal and Error; Harmless Error; Pleading.*—No harm resulted from the error in holding defendant's plea bad on demurrer, where the evidence clearly shows that the plea could not have been established.

APPEAL from Gadsden City Court.

Heard before Hon. JOHN J. DISQUE.

Detinue by F. E. McCarver and others against T. F. Griffin, for possession of a colt. Judgment for defendant, and plaintiff appeals. Transferred from the Court of Appeals, under Acts 1911, p. 449, § 6. Reversed and rendered.

The eighth plea sets up that plaintiffs claim title by virtue of a mortgage executel by W. R. Goss and wife, to plaintiff, which mortgage plaintiffs allege was a lien upon the mother of the colt at the time of the birth of the colt. Defendant avers that he purchased said colt

in good faith for value, and without notice of the exist-
ence of any lien existing on it, and without any knowl-
edge of any fact which would put him on inquiry, which,
if followed up, would lead to a discovery of the existence
of said lien, and defendant avers that at the time he pur-
chased said colt, it was not mentioned in any recorded
mortgage or lien, nor would the existence of such mort-
gage or lien be discovered by any inquiry reasonably
suggested from the facts stated by said record, that at
the time of said purchase said colt was no longer fol-
lowing its mother, but had been separated from her for
some time, and was the arbiter of its own movement,
and that at the time of said purchase the mother of said
colt had been disposed of by consent of plaintiffs. to a
third party, and was in the possession of a different party
than the one who had possession of the colt, and that
prior to said purchase, plaintiffs released the mother of
said colt from said mortgage. This plea contains in
effect the contention of defendant, while the contention
of plaintiffs is that the mother of the colt was the only
horse or mare owned by Gross at the time of the giving
of the mortgage, or at the time of the birth of the colt,
and defendant knew that the mortgagor raised said colt
from its birth up to the time defendant purchased same;
that the mortgage was properly recorded in the county
where the property was located, which served to place
defendant on notice of plaintiff's lien and title to said
colt. The trial was by the court without a jury, and a
verdict was rendered for defendant on the facts.

CULLI & MARTIN, for appellant.

McCORD & DAVIS, for appellee.

ANDERSON, C. J.—(1-3) It is a well-settled rule
of law that the offspring or increase of female animals,

when they come into visible existence and are endowed with independent life, rest under the same title or ownership their dam was subject to, at the time they were brought forth. "Hence it has been often held that, if the dam, at the time of parturition be under mortgage incumbrance, the offspring passes immediately under the same incumbrance."—*Meyer Bros. v. Cook,* 85 Ala. 417, 5 South. 147; *Gans v. McWilliams,* 62 Ala. 41; *Dyer v. State,* 88 Ala. 225, 7 South. 267. As between mortgagor and mortgagee the offspring continues subject to the incumbrance regardless of the age and development of same. There seems to be an exception, however, in favor of a bona fide purchaser who, finding such an offspring in the possession of the mortgagor, arbiter of its own movements, and not following its dam, purchased and paid for same without actual notice of the mortgage lien.—*Meyer Bros. v. Cook, supra;* Jones on Chattel Mortgages, 149, 150. It would therefore seem that the registration of the mortgage of the dam would be constructive notice of the same, as to the offspring, only during the period necessary for the nurture of the latter. After the period of nurture has passed, and the offspring is separated from the mother, a purchaser in good faith for a valuable consideration acquires title free from the mortgage; that is, he would not be chargeable with the constructive notice given by the registration of the mortgage, and would acquire a good title unless he had actual notice of the mortgage on the dam, or notice of facts sufficient to put him upon inquiry which, if followed up, would disclose that the offspring in question was subject to the mortgage.

(4) In the case at bar, the defendant testified as a witness, and admitted that before he bought the colt in question, Goss, the mortgagor, told him that he had raised it, and that it was from the Gilbert horse and

the mortgagor's mare (the one in plaintiffs' mortgage) ;
also that McCarver told him he had a mortgage on the
mortgagor's horses. We think that this was sufficient
to put the defendant on notice that the colt he bought
was the offspring of a mare upon which the plaintiffs
had a mortgage, and if such was the case, he was charge-
able with the legal result; that is, that the mortgage
included the colt. It is true he said he had a mortgage
on Goss' "horses" and did not say "mare," but this was
the use of the general collective term, and the term was
broad enough to include a mare owned by Goss at the
time; and at least should have excited inquiry which
would have led to a discovery that the plaintiffs held a
mortgage on the mother of the colt.—*Packwood v. At-
kinson,* 79 Miss. 646, 31 South. 337.

(5) Whether or not the description of an animal, in
a mortgage, as "a horse" would convey "a mare" we
need not determine; but it seems to be a general rule as
to pleading that the word "horse" is broad enough to
include, and does include, one of the female sex of the
genus, and therefore "mare" is included therein.—
*Southern Railway Co. v. Pogue,* 145 Ala. 444, 40 South.
565. We also think that when McCarver told defend-
ant that he had a mortgage on "Goss' horses," he meant,
in common parlance, the "mare" also, or, at least, that
his use of this term was sufficient to put the defendant
on inquiry as to whether or not the mortgage included
the mare which was known to him to be the mother of
the colt when he bought the latter from Goss.

As the plaintiffs' mortgage included the colt, and as
the evidence does not show that the defendant was a
bona fide purchaser of same without notice, the trial
court erred in rendering judgment for the defendant,
and the judgment of the city court is reversed; and, as
this case was tried by the court without a jury, we will,

under the Practice Act applicable to said court, here render a judgment for the plaintiffs for the property sued for, or for its alternate value, $100, this being the judgment that should have been rendered.

(6) It may be that the eighth plea was not subject to the plaintiff's demurrer, although it set up a defense which could have been shown under the general issue; still the defendant was not entitled to a judgment upon his plea as the same was not proven, the proof showing that he had notice that the colt was subject to the plaintiff's mortgage.

MAYFIELD, SOMERVILLE, and THOMAS, JJ., concur.