FERGUSON v. GRAND RAPIDS LAND CONTRACT CO.

1. USURY—CHARGE FOR SERVICES.
   A reasonable charge for services in financing a building proposition does not amount to usury.

2. SAME—INTENTION EXPRESSED IN CONTRACT DETERMINES WHETHER SERVICE CHARGE USURY.
   Whether a charge in connection with financing a building proposition was a reasonable service charge or one tainted with usury should be determined by the intention of the parties as expressed in their written contract covering same.

3. SAME—LENDER MAY NOT CHARGE FOR SERVICES TO PROTECT OWN SECURITY.
   No charge may be made by the lender for services rendered in connection with a financing proposition which are deemed necessary to protect its security.

4. SAME—CHARGE IN EXCESS OF LEGAL INTEREST USURY.
   A charge made by the lender in connection with a financing proposition, which was called a service charge, but which in fact was a profit above the legal interest rate, and was based thereon, comes within the meaning of the statute against usury, and therefore constitutes usury.

5. SAME—TRANSACTION HELD TO BE A LOAN RATHER THAN PURCHASE AND SALE.
   Where a written contract provided that the owner of lots should deed them as security to a finance company, who would erect a building thereon, and then resell to the owner on a contract at a certain price, crediting thereon the agreed value of the lots, the transaction was a loan rather than a purchase and sale, and, therefore, the statute against usury is applicable thereto.

Appeal from Kent; Brown (William B.), J. Submitted January 3, 1928. (Docket No. 7.) Decided April 3, 1928.

[1]Usury, 39 Cyc. p. 981; [2]Id., 39 Cyc. p. 919; [4]Id., 39 Cyc. p. 982; [5]Id., 39 Cyc. p. 930; 21 A. L. R. 819; 21 R. C. L. 231; 4 R. C. L. Supp. 1747; 6 R. C. L. Supp. 1649.

Bill by Meta M. Ferguson against the Grand Rapids Land Contract Company for an accounting, and to compel the conveyance of certain real estate. From a decree dismissing the bill, plaintiff appeals. Reversed.

*Renihan & Lilly*, for plaintiff.

*Jewell, Face & Messinger*, for defendant.

McDONALD, J.   This bill was filed for an accounting and to compel the conveyance of certain real estate to the plaintiff in accordance with a land contract between the parties hereto on March 1, 1924. The plaintiff was the owner of two lots on Guild street in the city of Grand Rapids, Michigan. On these lots she desired to build a riding stable. She made an agreement with the defendant to finance its construction. By the terms of the agreement the building was to cost $6,500, which the defendant was to advance as the construction progressed. The plaintiff was to deed her two lots to the defendant at an agreed valuation of $1,500, and when the building was completed the defendant was to reconvey them by land contract at a consideration of $8,722.22 on which $1,500, the agreed value of the lots, was to be credited; and the balance was to be paid by the plaintiff in equal monthly installments with interest at 7 per cent. per annum. The building was completed and paid for by the defendant and the land contract executed according to agreement. After she had paid a considerable amount on the contract, a dispute arose between the parties as to the balance. The plaintiff claimed that the correct balance was $2,919.63. She tendered this amount to the defendant and demanded a conveyance of the property. The tender was refused. The principal difference between the parties concerned an item of $722.22, which the plaintiff refused to pay

on the ground that it was usurious. The defendant insisted that it was a proper charge and should be paid as agreed. This suit was the result of the controversy. On the hearing, the circuit judge found against the plaintiff and dismissed her bill. From the decree entered she has appealed.

The question involved is whether the item of $722.22 is usury. The defendant claims that the $722.22 is not an interest charge; that it should be allowed as an agreed compensation for services rendered or as a legitimate profit on the transaction which was in effect a purchase and sale of property.

A reasonable charge for services in financing a building proposition does not amount to usury. Was this a charge for services? Considerable oral testimony was taken as to the understanding and intention of the parties, but their intention as shown by the written stipulations in the agreement should control. On this question the agreement is very clear. It provides:

"It is further understood and agreed that said first party (defendant) shall not be obligated to provide plans or alterations therein, or to pay for said plans, or to negotiate a contract for the building of said riding club stable, or to superintend the construction of the same, but that said first party shall have a supervisory authority over the construction of said building only to the extent that the value of the security to the land contract herein provided for shall not be impaired by any failure or neglect on the part of the contractor to erect said building according to said plans and specifications, and to the extent that any building contract that said first party may enter into with said contractor shall be executed according to the terms thereof; the intent being that said first party shall finance the purchase of the above described premises, and the cost of the building, at the time and in the manner specified and as security of so financing shall take title to said premises and reconvey the same by a land contract as hereinbefore provided, and that its duty shall end therewith."

This agreement was drawn by Mr. Kinsey, president of the defendant company.    He is an educated man with large business experience and was familiar with the work of drafting papers concerning real estate transactions and financing propositions.    It is fair to assume that the stipulations of the agreement which he prepared are in strict accordance with the preliminary understanding of the parties as to services. It will be noted by reference to that portion of the agreement above quoted that the services to be rendered were such as were deemed necessary to protect the security of his company.    They were services usually incident to such a financing proposition for which the defendant may not charge.    *Miller* v. *Ashton*, 241 Mich. 46, and cases cited.

But this charge of $722.22 was not based on compensation for services.    In his testimony, Mr. Kinsey characterized it as a "profit on the transaction;" and that in truth is what it was intended to be.    As such, Is it usury?    In determining this question, it will not be necessary to enter upon any extended analysis of the testimony.    Mr. Kinsey was a witness.    We are impressed with his fairness and truthfulness, and may rest our decision on his testimony.    He testified:

"At one time in particular when I suggested to her that she could distribute a portion of this profit in the shape of interest, that we would charge her 10 per cent. if she paid 7 per cent. or 12½ per cent. at 6 per cent. interest; she chose the 7 per cent. because it would distribute that profit over a period of time, and she complimented me on that and said that she considered that we save them immediate expense and so on.    *    *    *

"In talking about the rate of interest we talked some of 7 per cent., some 6 per cent. and some 6½ per cent. We distributed our profit over the length of the contract by increasing the rate of interest.    We make the rate of interest or the profit a little bit less if the interest is higher.

"*Q.* Give me an illustration.    What would you say

as to what would be the result if you charged 6 per cent. interest?

"*A.* Charge 12½ per. cent.

"*Q.* 12½ per cent. of what?

"*A.* For the construction of the building, the building of the building.

"*Q.* In other words, you arrive at the new figure by dividing $6,500 by 87½?

"*A.* Yes.   *   *   *

"We arrived at the figure $8,722.22 which is the figure that appears first in the application for the loan, by taking the $1,500 for the lots and the $6,500 for the net cost of the building, making $8,000 and then we deducted the $1,500 as a down payment again and divided the $6,500 by 90.   That is not 10 per cent. of $6,500, but 10 per cent. of what she would owe us. She would owe us $6,500 plus $722.22.   That was figured when the application was made."

From this testimony, it clearly appears that the amount of the profit depended on the stipulated rate of interest.   If the interest to be paid were 6 per cent., the profit charged would be more than if the interest rate were 7 per cent.   If the agreed interest rate were 6 per cent., the profit would be 12½ per cent. of the contract price.   If it were 7 per cent., the profit charged would be 10 per cent. of the contract price.   In other words, the $722.22 profit charged bears a direct relation to the stipulated rate of interest.   It is an indirect charge of a greater rate of interest than is allowed by law.   Within the meaning of the statute it is usury.   See *Continental National Bank* v. *Fleming,* 170 Mich. 624.

The contention of counsel for the defendant that the transaction did not involve a loan, but was the purchase and resale of property at a profit, is without merit.   The agreement describes the character of the transaction as follows:

"The intent being that said first party shall finance the purchase of the above described premises, and the cost of building, at the time and in the manner speci-

fied, and as security of so financing shall take title to said premises and reconvey the same by a land contract."

There was no purchase of the lots. The plaintiff owned the fee in them. She deeded them to defendant as security, and apart from the lots and building gave other security which we need not here specify. There is no basis for the claim that the defendant purchased the lots, built the building, and sold the property to the plaintiff.

The item of $722.22 should be deducted from the amount claimed by the defendant. All other items in dispute are proper charges and should be paid by the plaintiff. Undoubtedly, counsel can now agree upon the exact unpaid balance on the contract. When the correct amount is paid the plaintiff is entitled to a reconveyance of the premises. A decree will be entered in accordance with this opinion.

The decree of the circuit court is reversed, with costs to the plaintiff.

NORTH, FELLOWS, WIEST, CLARK, and SHARPE, JJ., concurred.

The late Chief Justice FLANNIGAN did not sit.

The late Justice BIRD took no part in this decision.