SULTAN v. CENTRAL LIFE INSURANCE COMPANY OF ILLINOIS.

1. USURY—SALE OF OTHER PROPERTY BY LENDER AT EXCESSIVE PRICE AS CONDITION PRECEDENT OF LOAN.

Lender of money which required as a condition precedent of a loan of $42,500 at 5 per cent. per annum for building a place to house an automobile sales business owned by a corporation, in turn largely owned by borrowers, that borrowers purchase an old 4-family apartment house at $18,800, some $9,600 more than its value, effected a usurious loan.

2. SAME—SALE OF PROPERTY AS CONDITION PRECEDENT TO LOAN—VALUE.

When it is made a condition precedent to the lending of money that land or goods be sold, either by the lender to the borrower at a price exceeding true value, or by the borrower to the lender at a price falling short of true value, the transaction is usurious provided disparity was known to the parties whether they said anything about it or not.

3. SAME—EVIDENCE OF INTENT.

That loan was not made directly to corporate automobile dealer but to individuals who owned most of the shares of stock therein would not necessarily evidence an intent not to effect

Definition of usury, see 2 Restatement, Contracts, § 526 and note.

a usurious loan where lender demanded that borrower purchase an apartment building as such a purchase might have been *ultra vires* as to a corporate automobile dealer.

4. SAME—STATEMENT THAT NOTE WAS FREE FROM DEFENSES AT LAW OR EQUITY.

Lender's demand that borrower sign a document that mortgage note was free from all defenses in law and equity should be considered in determining question as to whether transaction in ·question resulted in a usurious loan, such a document being indicative of an attempt to legalize something proscribed by law.

5. SAME—PURCHASE OF LIFE INSURANCE AS A CONDITION PRECEDENT TO LOAN—EVIDENCE.

In suit wherein borrowers from a life insurance company sought to have loan declared a usurious one, whether or not a plaintiff's obligation to take out a life insurance policy with defendant and have the premium deducted from the proceeds of the loan was additional usury is not determined where circuit court commissioner did not deduct such item and plaintiff did not take any exception to the report and not all the facts relative thereto are clear.

6. SAME—FORECLOSURE IN EQUITY—CROSS BILL—INTEREST.

Mortgagors who sued to restrain foreclosure by advertisement of real estate mortgage given as a part of a usurious transaction are not required to pay interest where mortgagee filed cross bill seeking foreclosure ·in equity since the filing of a cross bill therefor constituted an action on a usurious contract releasing obligor from paying any interest thereon (2 Comp. Laws 1929, § 9240).

7. SAME—FORECLOSURE—JURISDICTION—ADMISSION—INTEREST.

In a mortgagors' suit to restrain foreclosure by advertisement of real estate mortgage given as part of a usurious transaction if the mortgagee files an answer admitting the jurisdiction of the court and joins in mortgagor's prayer that amount legally due be determined by the court, such answer does not constitute an action on a usurious contract and allowance of interest would be proper (2 Comp. Laws 1929, § 9240).

8. MORTGAGES—FORECLOSURE—USURY—CROSS BILL—INTEREST.

In suit by mortgagors to restrain foreclosure by advertisement of a mortgage which had been given as a part of a usurious transaction, after mortgagee filed a cross bill seeking foreclosure in equity it would be improper for the court to permit

the mortgagee to amend its pleadings so as to withdraw it, since such an amendment would prejudice the mortgagor by reviving his liability to pay legal interest (2 Comp. Laws 1929, § 9240).

9. Usury—Loss of Interest—Deduction of Overpayment on Property Sold Borrower by Lender.

Mortgagors who were required to purchase another parcel of real estate from mortgagee at $18,800, some $9,600 above its value, as a condition precedent to making of loan of $42,500 at 5 per cent. interest were entitled·to have such overpayment deducted from amount due on loan as well as mortgage tax and $100 fee charged by mortgagee's attorneys in addition to not being liable for interest where mortgagee sought foreclosure on cross bill in mortgagors' suit to have transaction declared usurious (2 Comp. Laws 1929, § 9240).

10. Mortgages—Usury—Fire Loss—Supplemental Bill.

Mortgagors who had sought to have transaction incident to which mortgage was given declared a usurious one were entitled to file a supplemental bill to compel mortgagee to indorse check drawn by fire insurer to pay for loss by fire on premises three days prior to the filing of findings of fact by the circuit court commissioner in the main suit and to have determination made as to amount payable to mortgagors and mortgagee.

Chandler, C. J., and Sharpe, J., dissenting in part.

Appeal from Wayne; Chenot (James E.), J. Submitted April 9, 1942. (Docket No. 46, Calendar No. 41,932.) Decided July 1, 1942.

Bill by Louis Sultan and wife against Central Life Insurance Company of Illinois, an Illinois corporation, for an injunction, an accounting, and to have a loan decreed usurious. Cross bill by defendant against plaintiffs for foreclosure of a mortgage. Decree for defendant. Plaintiffs appeal. Reversed and remanded for further proceedings.

*Max D. Schuster* (*Harry H. Platt*, of counsel), for plaintiffs.

*Yerkes, Sells & Putnam,* for defendant.

Chandler, C. J. (*dissenting in part*). For some time prior to the facts hereinafter related, the Louis Sultan Chevrolet Company, a corporation, had been purchasing a parcel of real estate located on Grand River avenue in the city of Detroit from the Gemmer Manufacturing Company. The Chevrolet Company was engaged in the automobile sales business and Louis Sultan, one of the plaintiffs herein who conducted the affairs of said company, desired to erect a modern building on the premises to be used for this purpose.

In 1936, he contacted one William Hordes, an agent of defendant in Detroit, to determine if he might secure a loan with which to make the improvements in question. Nothing was done at this time toward consummation of a loan. However, in the late summer of 1937, Mr. Sultan again discussed the question with Hordes, and after some negotiation, received information that he could borrow funds from defendant, providing he was willing to purchase some other property from defendant which it owned in Detroit and desired to sell.

Sultan testified that he was not interested in purchasing any additional real estate and that he so informed Hordes; and that the latter stated that if he wanted to obtain the loan it was essential that he agree to purchase a piece of property from defendant. He further testified that because it was necessary that he obtain the money, demolition having been started on his old building, he agreed to the arrangement. The property he agreed to purchase will be referred to herein as the Virginia Park property, that being the name of the street upon which it was located.

Hordes informed Sultan that the purchase price of the property was $19,000 and, according to Sultan, after examining the same he told Hordes that it was not worth half that much. Thereafter, the two went to Chicago where the entire matter was discussed with Mr. McArthur, president of the defendant company.

At this meeting, Sultan again protested that he did not want to purchase the Virginia Park property and that in any event it was not worth the price demanded. It appears, however, that defendant refused to make the loan unless the sale was consummated as a condition thereof, although the price of the Virginia Park property was reduced to $18,800.

Mr. Sultan finally consented and at that point it was understood that he was to obtain a loan of $35,000, out of which was to be deducted $7,500 as the down payment on the Virginia Park property, leaving the balance available to Sultan.

Mr. Sultan was informed that the funds would be sent to defendant's attorney in Detroit, Mr. Putnam, who would prepare the necessary papers to be executed by plaintiffs. Thereafter, and before completion of the deal, it was agreed that plaintiff could borrow an additional $7,500 to be used for improvement of a parcel of land he had purchased adjacent to the garage property on Grand River avenue. Consequently, the total amount of the loan became $42,500.

On April 21, 1938, the necessary papers to close the loan were executed by plaintiffs, the same consisting of a note in the principal amount of $42,500, with interest at five per cent. per annum, secured by a mortgage covering the Grand River avenue property, and a note in the amount of $11,300, with interest at four per cent. per annum, secured by a

mortgage on the Virginia Park property, which principal amount represented the balance of the purchase price thereof.

On the same day, plaintiffs were given a check for $7,500, representing the down payment on the Virginia Park property which was immediately indorsed by them and returned to defendant's attorney. The same kind of transaction occurred with reference to another check for $650 which represented a payment on the premium of a $20,000 life insurance policy purchased from defendant by Sultan at the Chicago meeting at the suggestion of Mr. McArthur. In addition to these sums which were deducted from the proceeds of the loan, the mortgage tax in the amount of $212.50 was deducted. At a later date, plaintiffs were required to pay $100 as part of defendants' attorney fee incurred in connection with the loan.

Default occurred in the terms of the mortgage covering the property on Grand River avenue and defendant instituted foreclosure thereof by advertisement. Thereupon, plaintiffs filed the bill of complaint herein to enjoin said foreclosure, and for an accounting, claiming that the mortgage in question was usurious. Defendant answered, denying the charge of usury, and also filed a cross bill praying for an accounting and foreclosure of the mortgage, having abandoned its foreclosure by advertisement.

The cause was referred to a commissioner who made findings of fact and conclusions of law, wherein he held that the transaction was usurious and that all interest on the sum loaned should be declared void, recommending that a decree of foreclosure be entered in favor of defendant and that the amount due be restricted to the balance of principal owed by plaintiffs, plus taxes paid by defendant, or a total of $32,804.38.

The trial court disagreed, holding that the transaction was not usurious, and a decree was entered in favor of defendant, fixing the amount due as $46,533.88, including principal and interest, plus $3,845.08, the taxes paid by defendant. Plaintiffs thereupon appealed.

Plaintiffs claim the transaction was usurious because of certain elements present therein. These are, the claimed excessive price of the Virginia Park property which they were required to purchase as a condition of securing the loan, the premium paid on the life insurance policy in the amount of $650, the $100 paid on defendant's attorney fee, the mortgage tax in the amount of $212.50 and $211.42, termed excessive interest, which represents interest charged from the date of the mortgage to the date all of the funds were disbursed, it appearing that funds were disbursed from time to time subsequent to the execution date in payment of construction bills as they were presented to defendant's attorney.

The maximum legal rate of interest which may be charged in this state is seven per cent. per annum. 2 Comp. Laws 1929, § 9239 (Stat. Ann. § 19.11). And to sustain the claims of plaintiffs it was necessary for them to show by a preponderance of the evidence that there was intent on the part of defendant by the transaction in question to exact a rate of interest in excess of the maximum amount permitted by the cited statutory provision. See *Flax* v. *Mutual Building & Loan Ass'n of Bay County,* 198 Mich. 676; *Domb"oorajian* v. *Woodruff,* 239 Mich. 1; *Ferguson* v. *Grand Rapids Land Contract Co.,* 242 Mich. 314 (63 A. L. R. 820); *Bankers Trust Co. of Detroit* v. *Cowhey,* 243 Mich. 353; *Minnesota Mutual Life Ins. Co.* v. *Schlanger,* 284 Mich. 208.

A leading, and the principal case relied upon by appellants, is *E. C. Warner Co.* v. *W. B. Foshay Co.* (C. C. A.), 57 Fed. (2d) 656, which we have carefully examined, together with other authorities. It is apparent that in all the cases where the courts have been called upon to decide whether a sale of property made contemporaneously with a loan constitutes a usurious transaction, they have had to determine if the intent to exact usury was present. In some instances, it has been found that the necessary element of intent was lacking; in others, it has been found that the sale price of the property was not excessive as compared with its claimed actual value, as the fact that a sale is attached as a condition of the loan is not of itself sufficient to condemn the transaction.

In the case before us, the sale price of the Virginia Park property was $18,800. The commissioner found the value thereof to be $9,200, based upon the testimony of plaintiffs' witnesses; the court found it to be worth $14,820, based upon the testimony of defendant's witnesses. It would, therefore, appear that the price obtained was in excess of the actual value of the property sold.

However, we are of the opinion, as was the trial court, that despite this fact the element of intent to obtain illegal interest does not appear. The record shows that the defendant company had previously held a mortgage on the Virginia Park property which had been foreclosed. The sale price approximated the investment it had in the premises according to the books of the company, and it naturally desired to liquidate the asset with the least possible loss.

In addition, there are other factors which point to the absence of the required intent, without considering the testimony of defendant's officers and agents who participated in the negotiations leading up to

the consummation of the loan. In the first place, the interest rate on the Grand River mortgage was five per cent. per annum, and on the Virginia Park mortgage four per cent. per annum. If defendant had intended to exact a usurious rate of interest, the expected thing would be to find these instruments bearing the maximum legal rate. Furthermore, at the time the deal was closed, defendant required that the land contract from the Gemmer Manufacturing Company, under which the Grand River property was being purchased by the Sultan Chevrolet Corporation, be assigned to plaintiffs individually, who then executed the mortgage and became personally responsible thereunder. This action is not compatible with a claimed usurious intent for had such intent been present defendant undoubtedly would have taken the mortgage from the corporation and the defense of usury would not then have been available. See Act No. 327, § 78, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 10135–78, Stat. Ann. § 21.78).

We are not unmindful that the fact that a sale price in excess of the actual value was obtained should be considered and is important in determining the presence or absence of a usurious intent, and we have done so in this case. However, it is our conclusion that when all the facts and circumstances are considered, as we have outlined, the usurious intent cannot be said to have been present.

This conclusion would warrant complete affirmance of the decree of the trial court were it not for the question concerning plaintiffs' supplemental bill of complaint which we will now discuss.

The decree was presented for settlement on December 12, 1941. On the same day, plaintiffs petitioned for leave to file a supplemental bill of complaint which alleged that on March 22, 1941, three days prior to the filing of the findings of fact and

conclusions of law by the commissioner, a fire occurred at the Grand River avenue premises, the fire insurance policy being issued to plaintiffs and showing the interest of defendant as mortgagee; that after the fire plaintiffs proceeded to repair the premises and adjusted the amount of the loss with the fire insurance company at $16,475.50; that thereafter the fire insurance company issued its check in this amount payable to plaintiffs and defendant and that plaintiffs requested defendant to indorse the check so that they might pay for the cost of the repairs, which defendant arbitrarily refused to do; that on December 5, 1941, plaintiffs' counsel informed defendant's counsel of his intention to file a supplemental bill of complaint with reference to this matter and that thereupon it was agreed that if plaintiffs would present their bills for repairs on December 8, 1941, defendant would endorse the check, provided that if the proceeds thereof exceeded the cost of the repairs, the excess would be applied in payment of taxes which had accrued since the trial of the case; and that after some further negotiations, and on December 11, 1941, defendant's counsel informed plaintiffs' attorney that defendant refused to carry out this agreement and to indorse the check.

The supplemental bill concluded with a prayer that a mandatory injunction issue to compel defendant to indorse the check; that the amount defendant was entitled to receive out of the proceeds be determined, and that the court decree that the retention of such amount as the court might find defendant entitled to retain should cure the default existing under the mortgage.

On the same day the decree was filed, an order was entered denying plaintiffs' motion for leave to file the supplemental bill.

Either plaintiffs or defendant should have the proceeds of this check and we believe the trial court should have granted plaintiffs' motion for leave to file the supplemental bill so that the issue presented could have been determined.

Were it not for this feature, the decree would be affirmed. In view thereof, however, it will be reversed and the case remanded. Plaintiffs may have leave to file their supplemental bill in the court below and the parties can present such proof as they may desire relative to the question raised. Plaintiffs shall recover costs of this appeal.

Sharpe, J., concurred with Chandler, C. J.

Butzel, J. I believe the trial judge should have confirmed the report of the circuit court commissioner who alone had the advantage of seeing and hearing the witnesses. The intention to exact usury by making a necessitous borrower purchase property at twice its value is convincingly clear. The defendant had taken on foreclosure and owned for many years an old two-story four-family apartment house with an additional apartment in a high basement, the latter being occupied by a custodian who paid $17.50 per month and furnished his services in looking after the building. It had only one furnace for all the apartments, the heat being supplied by the lessor. The two apartments on the first floor were rented for $35 per month and the two on the second floor for $32.50 per month. This with the $17.50 per month for the basement made a net rental of $152.50 per month, provided there were no vacancies. The comparatively small rentals reflected the fact that the apartment building was 21 years old and in an undesirable condition and neighborhood, the latter being described by a witness as "a very

concentrated habitation there, which isn't entirely satisfactory from the residential point, approaching the tenement standpoint." Plaintiffs were obliged to purchase the apartment building for $18,800 in order to secure the loan on the Grand River property. Immediately upon taking possession of the apartment building, they were put to the expense of erecting a new roof, installing a new boiler and redecorating all the apartments.

The sole expert who testified for defendant placed a value of $14,820 on the property. This was approximately $4,000 less than the price plaintiffs were forced to agree to pay. The expert based his high estimate largely upon the cubic content of the building which he multiplied by 32 cents a cubic foot, and then deducted the depreciation. This method, while of value under certain circumstances, becomes undependable when applied to an old building in a not too attractive neighborhood. The head building appraiser of the city of Detroit assessor's office stated that 10 cents per cubic foot was the proper figure to use. He also estimated the cubic content at 5,000 cubic feet less than was found by defendant's witness. Defendant's appraiser found that the cost of heating the apartment amounted to $225 per year. One of plaintiffs' testified that he bought 50 tons of coal a year at $8 a ton. Defendant's witness further placed a higher value on the land because it abutted an alley to the west. The photographic exhibits showed that the east side of the lot adjoined the rear of business lots facing on Linwood avenue and was in close proximity to the rear of stores with wooden porches and steps. This might detract from the value of the property for residential purposes. The witness further tried to carve an additional rent-producing apartment out of the basement by taking from the present tenant part of the basement for

which he furnished his services in looking after the building in addition to paying the $17.50 monthly rent.

The wife of the custodian testified that the basement was in very bad condition, the joists under the living and dining rooms were in need of repair, while those under the kitchen and hallway were entirely worn out. The expert from the tax assessor's office placed a value of $6,450 on the building and $1,260 on the land. The estimates of plaintiffs' experts were slightly higher. The commissioner took the highest of these estimates and placed a value of $9,200 on the property. The evidence showed that this was very fair. Defendant had loaned $15,000 on the property in 1925 and in succeeding years it added taxes and other expenses paid by it so as to bring its cost to $19,669.89. It demanded $18,800 from plaintiffs or $9,600 more than the property was worth. Plaintiffs had to have a loan. The testimony on behalf of plaintiffs showed that the expression "bonus" was used by defendant's agent in the negotiation. Defendant denies this. Whether the excess price was called a bonus or not, the effect of the transaction was to force plaintiff to pay $9,600 more for the property than it was worth. This was a method of exacting usury. When it is made a condition precedent to the lending of money that land or goods be sold, either by the lender to the borrower at a price exceeding true value, or by the borrower to the lender at a price falling short of true value, the courts have never hesitated to characterize the transaction as a cover for usury. In such cases, intent is inferable from the disparity between the sale price and the true value, provided such disparity was known to the parties, whether they said anything about it or not. Such has been the consistent tenor of the American decisions from

1810 to the present day. *Rose* v. *Dickson,* 7 Johns. (N. Y.) 196; *Douglass* v. *McChesney,* 2 Rand. (23 Va.) 109; *Morgan* v. *Schermerhorn,* 1 Paige Ch. (N. Y.) 544 (19 Am. Dec. 449); *Bank of the Valley* v. *Stribling's Ex.,* 7 Leigh (34 Va.), 26; *Bank of Washington* v. *Arthur,* 3 Grat. (44 Va.) 173; *Root* v. *Pinney,* 11 Wis. 84; *Low* v. *Mussey's Estate,* 36 Vt. 183; *Earnest* v. *Hoskins,* 100 Pa. 551; *Meyer Brothers* v. *Cook,* 85 Ala. 417 (5 South. 147); *Carter* v. *Hook,* 116 Va. 812 (83 S. E. 386); *Norton* v. *Nathanson,* 85 N. J. Eq. 409 (97 Atl. 166), affirmed 86 N. J. Eq. 433, 434, 435 (99 Atl. 1070, 1071); *Sanford* v. *Hawthorne,* 103 Neb. 867 (174 N. W. 863); *E. C. Warner Co.* v. *W. B. Foshay Co.* (C. C. A.), 57 Fed. (2d) 656, certiorari denied, 286 U. S. 558 (52 Sup. Ct. 641, 70 L. Ed. 1292) (Minnesota law); *Bishop* v. *Rider,* 143 Misc. 291, affirmed 235 App. Div. 736 (255 N. Y. Supp. 787), affirmed 261 N. Y. 512 (185 N. E. 717); *In re Prince* (C. C. A.), 89 Fed. (2d) 681 (New York law). See 2 Restatement of the Law of Contracts, § 528, comment a; § 530, comment b.

While it is true that had the loan been made directly to the corporation in which plaintiffs owned practically all of the stock, the corporation could not under the law avail itself of the defense of usury, it is doubtful whether this question was considered when defendant demanded that the corporation first deed the Grand River property to the plaintiffs as individuals before making the loan. The record is silent as to why this was done but good business considerations might have made it desirable for defendant to have the personal obligation of plaintiffs behind the loan instead of that of the corporation. The motive possibly might have been due to a knowledge by defendant that buying apartment buildings is *ultra vires* of an incorporated Chevrolet dealer.

In this connection it becomes important that at the time the loan was made, plaintiffs were called upon to sign a document stating that the mortgage note of $42,500 was free from all defenses both in law and equity, and that the note and interest thereon would be fully paid when due. The suspicion is strong that defendant's demand that such a document be signed by plaintiff might have been for the very purpose of attempting to legalize something that the law proscribes.

Plaintiff was obliged also to take out a life insurance policy in defendant's company and the sum of $650 was deducted from the loan to apply on the insurance premium. We pass the question whether this was an additional usury, as the commissioner did not deduct this amount and plaintiff did not take any exception to his report. Not all the facts regarding the life insurance are clear.

The further question arises whether, in the case of a usurious loan, plaintiff, who filed a bill to restrain the foreclosure of the mortgage by advertisement, is bound to pay interest at 5 per cent. on the correct amount after proper deductions for the usurious charges. Inasmuch as defendant filed a cross bill asking for foreclosure in the instant chancery suit, plaintiffs are not required to pay any interest.

From 1843 to 1891 the obligee of a usurious loan could bring action thereon and obtain judgment for the principal and legal interest. Act No. 47, § 2, Pub. Acts 1843 (Rev. Stat. 1846, chap. 34, § 4); *Thurston* v. *Prentiss,* Walk. Ch. (Mich.) 529; *Craig* v. *Butler,* 9 Mich. 21. In the latter year the law was changed so as to provide that "in any action brought by any person" on a usurious contract, "defendant shall not be compelled to pay any interest thereon." Act No. 156, § 2, Pub. Acts 1891 (2 Comp. Laws

1929, § 9240 [Stat. Ann. § 19.12]). Regarding the sources, history, and interpretation of Michigan legislation on usury, see discussion in *Fretz* v. *Murray*, 118 Mich. 302, 303, 304, and *Vandervelde* v. *Wilson*, 176 Mich. 185, 188–192.

Accordingly, it has since 1891 been held that, where a mortgagor sues to restrain a foreclosure by advertisement, then, if the mortgagee files a cross bill praying foreclosure in chancery, such cross bill constitutes an action on a usurious contract, within the meaning of the statute, and forfeits all interest. *Estey* v. *Capitol Investment, Building & Loan Association*, 131 Mich. 502; *Leach* v. *Dolese*, 186 Mich. 695 (Ann. Cas. 1917A, 1182). But if the mortgagee only files an answer, admitting the jurisdiction of the court and joining in the prayer of plaintiff mortgagor that the amount legally due be determined by the court, such answer does not constitute "an action by the mortgagee on this usurious contract, or in the nature of a cross bill seeking affirmative relief;" therefore, in such a case, the allowance of legal interest is proper. *People, ex rel. Attorney General*, v. *Detroit Mortgage Corp.*, 239 Mich. 495. The cross bill in the case at bar seeking foreclosure in chancery excuses payment of all interest. Once such a cross bill is filed, it is improper for the court to permit the mortgagee to amend his pleadings so as to withdraw it, since such an amendment would prejudice the mortgagor, by reviving his liability for legal interest. *Leach* v. *Dolese, supra.*

Defendant admits that $212.50 deducted from the loan to pay the mortgage tax was an improper charge against plaintiffs. We also find that the circuit court commissioner was correct in finding that the $100 attorneys' fees paid to defendant's attorneys and deducted from the loan to plaintiff was

also an improper charge. Plaintiff should be credited with $9,600, the excess amount they were obliged to pay for the Virginia avenue property. The total amount of the loan was $42,500. After deduction of $9,600, overpayment on the apartment building, $212.50 for the mortgage tax, $100 for defendant's attorneys' charge, $2,465.55 paid by plaintiff and credited as interest on the mortgage note, and $924.03 paid as principal, the balance of $29,197.92 is due defendant. There is also due defendant the additional amount of $3,606.46 paid out by it for taxes which plaintiffs should have paid.

We fully agree with the foregoing opinion as to plaintiffs' right to file a supplemental bill and the remanding of the case so that proper disposition can be made of moneys received on account of fire insurance.

Decree may be entered in accordance with this opinion and the case remanded for further proceedings. Plaintiff to recover costs of both courts.

Boyles, North, Starr, and Bushnell, JJ., concurred with Butzel, J. Wiest, J., took no part in this decision.